651 P.2d 560

**John GAY and Janice Gay, his wife, Plaintiffs and Appellants,**

v.

**COUNTY COMMISSIONERS OF BONNEVILLE COUNTY, and Simplot Soilbuilders, Inc., Defendants and Respondents.**

**No. 13647.**

Court of Appeals of Idaho.

Sept. 21, 1982.

Petition for Review Denied Nov. 15, 1982.

John M. Ohman, Cox, Ohman & Weinpel, Idaho Falls, for plaintiffs and appellants.

John D. Hansen and Michael R. Orme of Hansen, Boyle, Beard & Martin, Idaho Falls, for defendant and respondent, Simplot Soilbuilders, Inc.

BURNETT, Judge.

The issue presented is whether procedural due process was afforded in proceedings before zoning authorities, on a request to change the authorized use of a particular parcel of land. Simplot Soilbuilders, Inc., sought and obtained from Bonneville County a variance to construct a fertilizer storage and blending facility in an area zoned A–1 agricultural. The owners of adjoining property, John and Janice Gay, brought this action to vacate the variance. They alleged that numerous procedural errors had infected the variance granting process, and that certain findings made by the zoning authorities were unsupported by a sketchy record. The district court upheld the variance and dismissed the Gays' complaint. We reverse.

I

The threshold question is whether the district court applied the correct standard of judicial review. The district court—following what had been a well-established line of Idaho decisions—held that all actions of zoning authorities were presumptively

valid, and that the scope of judicial review was limited to looking for capriciousness, arbitrariness or discrimination. *See, e.g., Dawson Enterprises, Inc. v. Blaine County,* 98 Idaho 506, 567 P.2d 1257 (1977); *Ready-to-Pour, Inc. v. McCoy,* 95 Idaho 510, 511 P.2d 792 (1973). However, during the pendency of this appeal, our Supreme Court issued its decision in *Cooper v. Board of County Comm'rs of Ada County,* 101 Idaho 407, 614 P.2d 947 (1980). *Cooper* has fundamentally altered our perspective on the proper standard of judicial review.

*Cooper* draws a distinction between determination of general zoning policies and the application of such policies to specific situations. The former function is deemed legislative, and the latter quasi-judicial. The *Cooper* opinion treats the restricted standard of judicial review, employed by the district court and illustrated by *Dawson* and *Ready-to-Pour,* as a form of judicial deference to legislative action. This restrained standard of review is appropriate to such legislative determinations as the adoption of comprehensive plans or the enactment of general zoning ordinances. In contrast, a decision whether to rezone a particular parcel of property is regarded by *Cooper* as quasi-judicial, subject to due process protections. *See also, e.g., Fasano v. Board of County Comm'rs of Washington County,* 264 Or. 574, 507 P.2d 23 (1973), *overruled on other grounds, Neuberger v. City of Portland,* 288 Or. 585, 607 P.2d 722 (1980).

■ Although the county's action here has been characterized as the granting of a "variance," it was in reality a change of authorized land use for a particular parcel of property. The concept of a variance is narrowly treated by I.C. § 67–6516, part of the Local Planning Act of 1975, which had been enacted before Simplot filed its application with the county. The statute defines a variance as follows:

a modification of the requirements of the [zoning] ordinance as to lot size, lot coverage, width, depth, front yard, side yard, rear yard, setbacks, parking space, height of buildings; or other ordinance provision affecting the size or shape of a structure or the placement of the structure upon lots, or the size of lots.

A variance, as so defined, does not include a change of authorized land use. Rather, it is limited to adjustment of certain regulations concerning the physical characteristics of the subject property.

■ It is not disputed in this case that a fertilizer storage and blending facility fell outside the scope of permitted land uses in an A–1 agricultural zone. The "variance" procured by Simplot made permissible a land use previously not authorized by the zoning ordinance. We cannot view a request for such a "variance" differently from the request for rezoning addressed in *Cooper.* We hold that the *Cooper* requirement of procedural due process is applicable to proceedings on a request to change the land use authorized for a particular parcel of property, regardless of whether the subject of such proceedings carries the label "variance" or "rezoning."

The right to procedural due process is secured by Article 1, Section 13, of the Idaho Constitution and by the Fourteenth Amendment to the United States Constitution. That adjoining land owners, who are "affected persons" under I.C. § 67–6521, have property interests entitled to due process protection has not been contested in this case. Hence, we presume such interests to exist, "and the question then is what process is due." *Van Orden v. State,* 102 Idaho 663, 665, 637 P.2d 1159, 1161 (1981).

The United States Supreme Court has imparted an elastic quality to the concept of procedural due process.

'[D]ue process' . . . is not a technical conception with a fixed content unrelated to time, place and circumstances. . . . [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards; and final-

ly, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirements would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976); *accord, Van Orden v. State, supra.* The full dimensions of procedural due process, as contemplated by the *Cooper* decision, have yet to be developed. However, on the facts presented in *Cooper,* our Supreme Court held that a deprivation of due process resulted from (a) failure to give notice of a second meeting of zoning authorities (after a public hearing), when a rezoning request was considered and staff views were expressed; (b) failure to keep a transcribable verbatim record of the proceedings before the zoning authorities; and (c) failure to make specific written findings of fact and conclusions of law, upon which the decision on the rezoning request was based. *Cooper,* 101 Idaho at 411, 614 P.2d at 951.

■ In the present case, Bonneville County and Simplot have argued that the failures identified in *Cooper* merely illustrate factors relevant to a due process determination, and that none of them represents a deprivation of due process *per se.* However, specific findings and notice of meetings—from which we infer the right to a reasonable opportunity to present and to rebut evidence—have been recognized as fundamental elements of procedural due process in a variety of contexts. *See, e.g., Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Moreover, we view a transcribable record as indispensable to meaningful judicial review of rezoning proceedings where the sufficiency of notice, adequacy of opportunity to present or to rebut evidence, or the existence of evidence supporting the agency's findings may be put at issue.[1] Under Idaho law, a rezoning decision might be reviewed on any of these points. I.C. §§ 67–6521(d), 67–5215(g).

We believe that all the factors mentioned in *Cooper,* together with the opportunity to present and to rebut evidence, meet the standards for due process requirements under *Mathews v. Eldridge, infra.* First, each requirement is germane to the property interests of parties seeking, or adversely affected by, a change of zoning. Secondly, the requirements afford minimum safeguards against erroneous deprivation of such interests. Finally, none of the requirements appears to be unduly burdensome. Even the requirement of a transcribable record—which has excited some controversy in this appeal—compels zoning authorities to do no more than conduct the public's business "on the record," preserve documents received and produced, and operate a tape recorder during hearings or meetings when information on a requested zoning change is received or official action is taken. Accordingly, we hold that notice, opportunity to present and to rebut evidence, preparation of specific findings of fact and conclusions of law, and the keeping of a transcribable record comprise a common core of procedural due process requirements, constitutionally mandated in all cases where zoning authorities are requested to change the land use authorized for a particular parcel of property.

## II

We turn now to the questions of whether, and how, these due process requirements should be applied to the instant case. As noted previously, *Cooper* was decided while this appeal was pending. Bonneville County and Simplot, in a well-crafted brief and argument, urge that requirements based on *Cooper* not be applied "retroactively" here.

■■ There are no constitutional limitations upon a court's choice to give either retroactive or prospective effect to a decision altering a prior rule of law. *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14

---

[1] Since the filing of this appeal, the Idaho Legislature has imposed a statutory requirement of a transcribable record upon all land use proceedings where judicial review is available. *See* I.C. § 67–6536 (added in 1982).

L.Ed.2d 601 (1965); *Great Northern Railway Co. v. Sunburst Oil & Refining Co.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). The choice is discretionary. The range of available choices includes applying a new rule of law to all cases ("retroactivity"); applying the rule only to future cases ("prospectivity"); applying the rule to future cases and to the case decided (a form of "modified prospectivity"); or applying the rule to future cases, to the case decided, and to similar cases pending on appeal when the new rule was announced (a broader form of "modified prospectivity"). *See, e.g., Thompson v. Hagan,* 96 Idaho 19, 523 P.2d 1365 (1974); *Dawson v. Olson,* 94 Idaho 636, 496 P.2d 97 (1972). For ease of reference, we will call the broader form of modified prospectivity the "pipeline approach," because it includes similar cases in the appellate system "pipeline" when the new rule of law was announced.

In *Cooper* our Supreme Court did not explicitly pass on the retroactivity question. However, the court applied its holding on procedural due process to the facts of that case. Similarly, in *Walker-Schmidt Ranch v. Blaine County,* 101 Idaho 420, 614 P.2d 960 (1980)—a rezoning case pending when *Cooper* was decided—the Supreme Court reversed a determination by zoning authorities, and remanded the case with an instruction to the district court that the zoning authorities be directed to comply with *Cooper.* Thus, it plainly appears that the Supreme Court has not explicitly rejected retroactivity, and has, at least, adopted the "pipeline approach"—applying *Cooper* to the case decided and to similar cases pending when the rule of *Cooper* was announced, as well as to future cases. We need not address the possibility of "retroactivity" in this case. The "pipeline approach" is sufficient to determine the impact of *Cooper* upon this appeal.

Simplot and Bonneville County contend that this case is outside the "pipeline" because it is not a "similar" pending case. They point to the fact that *Cooper* and *Walker-Schmidt* were appeals from judgments upholding denials of rezoning requests. In contrast, this appeal has been taken from a judgment upholding the grant of a change in authorized land use. The significance of this distinction, we are told, is that during the course of this litigation Simplot actually constructed the facility for which the change in authorized land use had been sought. Simplot does not contend that the appeal has been rendered moot. However, we are now asked to exempt this case from due process scrutiny on the ground that Simplot had a right to expect that the decision of the county zoning authorities ultimately would be upheld under the pre-*Cooper* standard of judicial review.

■ Reliance upon an existing rule of law is one of the criteria to be considered in choosing among the various retroactivity and prospectivity alternatives. It must be weighed against two other criteria—the purpose of the new rule of law announced, and the effect of retroactivity or prospectivity upon the administration of justice. *See, e.g., Jones v. Watson,* 98 Idaho 606, 570 P.2d 284 (1977); *Rogers v. Yellowstone Park Co.,* 97 Idaho 14, 25, 539 P.2d 566, 577 (1974) (on rehearing); *Thompson v. Hagan, supra.* Ordinarily, these criteria are considered in the decision announcing a new rule of law. However, because no such analysis has yet been articulated in connection with *Cooper,* and because the instant case is asserted to be dissimilar, we will analyze the criteria here.

The reliance claimed by Simplot is not upon the pre-*Cooper* rule itself, but upon an expectation that applying the pre-*Cooper* standard necessarily would have resulted in upholding the county's zoning decision. We need not indulge in an "opinion within an opinion," actually applying the pre-*Cooper* standard. It is sufficient to note that judicial review in this case was sought to determine whether the proper zoning ordinance had been used by the county authorities; whether findings of fact, which were entered specifically in response to this litigation and which consisted partly of a recitation of language from the zoning ordinance, were valid; and whether the findings of fact were adequately supported by a record

which consisted partially of disputed recollections by zoning officials of the proceedings before them. We cannot say that the final disposition of such issues, on appeal, would have been free from doubt under the pre-*Cooper* standard. Moreover, when the district judge was informed that Simplot had started construction while a petition for judicial review was pending, he pointedly stated on the record, that "you are building at your peril, as it were." Simplot's counsel acknowledged that "[t]here are certain risks from this point on, I suppose." The weight that might otherwise have been ascribed to the reliance criterion is diminished in this case.

Against this diminished claim of reliance we must weigh the effect of the "pipeline approach" upon the purpose of the *Cooper* decision, and upon the administration of justice. The following language from the *Cooper* opinion is relevant to both of these criteria:

> It is clear that there is a pressing need in Idaho for established standards and procedures by which particularized land use regulation is to be administered. To allow the discretion of local zoning bodies to remain virtually unlimited in the determination of individual rights is to condone government by men rather than government by law. [101 Idaho at 411, 614 P.2d at 951.]

We believe this clear expression of purpose would be thwarted if we refused to apply the requirements of procedural due process to this case. It appears that the county zoning authorities made no specific findings to support their decision until faced with a lawsuit testing the validity of the decision. It further appears that the findings were based largely upon one zoning board member's familiarity with the property in question. The county kept no transcribable record from which a reviewing court could determine the extent to which the information known to this board member was presented at a public meeting of which notice had been given, or the extent to which the interested parties were afforded an opportunity to rebut such evidence.

■ We also believe that the proper administration of justice will best be served by applying due process requirements here. Due to the lack of an adequate record of what had transpired at the county level, the district judge was forced to take conflicting evidence, and to make findings, on how the zoning proceedings were conducted and on what basis the county reached its decision. The court then was required to review the propriety of the county's decision upon a record which the court itself had participated in creating. Developing the record of proceedings before an administrative agency, from conflicting evidence, falls outside the purposes for which a reviewing court should take evidence under applicable portions of I.C. § 67–5215. *Cf. Hill v. Board of County Comm'rs,* 101 Idaho 850, 623 P.2d 462 (1981) (holding trial de novo inappropriate upon petition for judicial review of denial of a rezoning application). More fundamentally, we view this process as a distortion of the judicial review function.

■ Weighing all of the criteria—reliance on the prior rule of law, the purpose of the new rule, and the effect upon the administration of justice—we conclude that the "pipeline approach" to *Cooper* is appropriate and that it embraces this case. We hold that the procedural due process requirements we have drawn from *Cooper* govern disposition of this appeal. Because no transcribable record was kept and because, without such a record, a reviewing court in this case could not determine that the interested parties received notice of all meetings at which information concerning the zoning request was received, or that an opportunity to rebut such information was afforded, we conclude that the county's decision must be set aside.

The other issues raised by the petition for judicial review likely would be mooted, or resolved, if the county conducted proceedings in conformity with the requirements we have drawn from *Cooper.* Therefore, the judgment of the district court is reversed, and the cause is remanded with direction that the district court require

Bonneville County to reconsider Simplot's request in conformity with this opinion.

WALTERS, C. J., and SWANSTROM, J., concur.