804 P.2d 928

STATE of Idaho, Plaintiff–Respondent,

v.

**Todd Allen BRUNO,**
**Defendant–Appellant.**

No. 18184.

Court of Appeals of Idaho.

Dec. 4, 1990.

Petition for Review Denied
Feb. 20, 1991.

Frederick G. Loats, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., Michael J. Kane, Deputy Atty. Gen., for plaintiff-respondent. Michael Kane argued.

SWANSTROM, Judge.

Following a jury trial, Todd Bruno was convicted of delivery of cocaine. He appeals, contending that the district court erred: (1) in denying his motion to dismiss based on evidence lost by the state and (2) in the giving or withholding of jury instructions.

The essential facts are as follows. In August, 1988, the Coeur d'Alene Police De-

partment, in conjunction with the Bureau of Narcotics of the Idaho Department of Law Enforcement, conducted an undercover drug operation as a result of information Stephanie Mille gave to a police officer about the activities of certain acquaintances, including Staci Herting. An officer recruited Stephanie Mille to make a cocaine buy. For this purpose, it was planned that Mille would contact Staci Herting while wearing a hidden microphone and carrying "buy money" furnished by the police. Conversations with Mille were to be recorded on equipment operated by the police in their automobile, and the police would monitor the conversations as the tape was being made.

On August 25, 1988, Mille met with Herting to arrange a purchase of cocaine. Herting made a telephone call to Todd Bruno and was given directions as to where to meet him to complete the drug deal. Mille then drove Herting to a bar in Coeur d'Alene where Herting had said they would meet the person who would sell them cocaine. When a green automobile drove up and stopped, Herting got out of Mille's automobile and went to talk with the driver and with a passenger, Todd Bruno. Mille stayed in her automobile. According to Herting's trial testimony, it was at this time that she gave $400 to Bruno for a half ounce of cocaine. After the transaction occurred, Herting stayed in the automobile with the two men and motioned for Mille to follow them in her automobile. They then stopped at a Circle K store where Bruno left the automobile for a few minutes. Mille arrived and went to the green automobile where Herting and the driver were "visiting." As Bruno returned to the automobile, Herting rejoined Mille in her automobile, and they went on their way.

Herting was later charged with possession of cocaine. Bruno was charged with delivery of a controlled substance, cocaine, in violation of I.C. § 37–2732. A second count of possession of a controlled substance was subsequently dismissed.

In the course of the undercover operation, the police recorded a total of three tapes containing the conversations picked up by Mille's body mike. The police maintained custody of the tapes and locked them into an officer's desk drawer at the station for use at trial. At the trial, however, it was disclosed that one of the tapes was missing. Because the defense had not had the opportunity to hear the missing tape and did not know what was contained on it, Bruno moved for dismissal of the delivery charge on the grounds that his due process rights were violated. The district court denied the motion. The jury found Bruno guilty of the charge. Bruno appeals, contending that the trial court should have dismissed the charge. The other issues raised in Bruno's appeal focus on the instructions given to the jury. We will address each issue in turn.

## I. LOST EVIDENCE

Bruno first contends that the district court committed error in denying his motion to dismiss when the state lost or destroyed one of the three tapes recorded from the body mike transmissions. Bruno submits that the loss of the evidence by the state constitutes a deprivation of his due process rights under the 5th and 14th Amendments to the United States Constitution and Article I, § 13 of the Idaho State Constitution and that this violation warrants dismissal.

The impact of the missing evidence on Bruno's case is the pivotal question which we must consider in reviewing the denial of the motion to dismiss. Quoting from our discussion in *State v. Leatherwood*, 104 Idaho 100, 656 P.2d 760 (Ct.App. 1982), "[from] an appellate perspective, we cannot say that the unavailability of certain evidence 'might have affected the outcome of the trial' in which a defendant was found guilty unless it would '[create] a reasonable doubt that did not otherwise exist.'" *Id.* at 104, 656 P.2d at 764. We also held therein that "evidence is 'material' under this standard if, viewed in relation to all competent evidence admitted at trial, it appears to raise a reasonable doubt concerning the defendant's guilt." *Id.* at 105, 656 P.2d at 765. The standard of materiality as applied to the due process issue

raised is thus a question of law upon which we exercise free review.

Underlying due process is a fundamental interest in assuring that a defendant has a fair trial. To insure that a defendant is afforded a meaningful opportunity to present a complete defense, "the Court has developed 'what might loosely be called the area of constitutionally guaranteed access to evidence.'" *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), *quoting United States v. Valenzuela–Bernal,* 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). The duty of the state not only to disclose evidence in the possession of the prosecutor or the police, but also to preserve that evidence for use by the defendant in the preparation of his case, has been the subject of numerous decisions. From these cases a standard of fairness has evolved defining the right of a defendant to evidence in the hands of the prosecution.

■ The United States Supreme Court in *Brady v. Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), held that, when evidence favorable to an accused is not disclosed by the prosecution after a request by the accused, there is a violation of due process where the undisclosed evidence is material either to guilt or punishment. The due process provisions in the federal constitution and in Art. 1, § 13 of the Idaho Constitution, guarantee the right of a defendant in a criminal action to disclosure of exculpatory evidence by the prosecution. *State v. Olsen,* 103 Idaho 278, 647 P.2d 734 (1982). Due process is also implicated when the state fails to preserve material evidence. *See State v. Ward,* 98 Idaho 571, 569 P.2d 916 (1977).

■ With respect to the destruction or loss of exculpatory evidence, we are guided by a balancing test to detect due process violations. *Paradis v. State,* 110 Idaho 534, 716 P.2d 1306 (1986). The three factors, derived from cases following *Brady,* that are to be considered in this analysis are:

(1) whether the evidence was material to the question of guilt or the degree of punishment;

(2) whether the defendant was prejudiced by the loss or destruction of the evidence; and

(3) whether the government was acting in good faith when it destroyed or lost the evidence.

*Id.* at 539, 716 P.2d at 1311.

In the present case, Bruno argues that we can only speculate as to the contents of the missing tape and its materiality. He also argues essentially that because the evidence is unknown, the court is unable to evaluate its materiality and must focus on whether the conduct of the police exhibited a disregard for the rights of the defendant. We cannot agree that the evidence contained in the lost tape was unknown and beyond evaluation.

■ When the nature of evidence lost or destroyed is unknown, and cannot be established indirectly by other testimony or evidence, then the materiality tests are not meaningful, and it would appear necessary to focus on the reasonableness of the state's conduct. *State v. Trumble,* 113 Idaho 835, 748 P.2d 826 (Ct.App.1987). The record in the case before us reveals that Mille and Herting testified as witnesses for the state about their conversations which were purportedly recorded on tape by the police. Additionally, the two officers who heard the conversation as it was being recorded testified and were available for cross-examination by the defense for the purpose of impeachment. From the trial transcript, it is apparent that defense counsel did not ask the officers what they heard, so no evidence contrary to the testimony of Mille and Herting was admitted. Clearly, the nature and materiality of the lost evidence was established through trial testimony, and we cannot agree that the evidence contained in the lost tape is unknown and beyond evaluation.

We can say that Bruno was not prejudiced by the loss of the tape in spite of the inadequate procedures followed by the police. As previously stated, evidence that has not been preserved by the prosecution, but which can be indirectly determined by other means, will be deemed material in a

constitutional sense "if, viewed in relation to all competent evidence admitted at trial, it appears to raise a reasonable doubt concerning the defendant's guilt." *State v. Leatherwood, supra* at 105, 656 P.2d at 765 (Ct.App.1982). The tape recordings of importance to Bruno, as in *Leatherwood,* were merely a secondary source, and the jury had the direct testimony adduced at trial on which to base their verdict of guilty. Bruno contends that it was Herting's testimony that convicted him and that the tape may have contained evidence sufficient to impeach Herting. We cannot say from the record before us, however, that Bruno's counsel showed any prejudice by the loss of the tape.

Finally, we consider whether the police acted in good faith when they lost the tape. The officer testified that he locked the three tapes into his desk drawer to which only he and his captain had a key. The tapes were released to the prosecutor by the officer and inexplicably one of the tapes was lost. The officer's handling of the evidence tapes comported with normal procedures at the department. Although those procedures seemed amateurish, there has been no showing of bad faith, or any disregard of the defendant's rights, on the part of the police.

Upon the record, we conclude that the district court did not abuse its discretion in denying Bruno's motion to dismiss.

## II. INSTRUCTIONS

■ We now turn to Bruno's claims of error in the instructions given to the jury prior to their deliberations. Bruno contends that the district court erred with regard to the instructions, specifically, by (1) failing to properly instruct as to the materiality of the lost evidence; (2) by refusing to properly instruct as to the accomplice status of the state's witness, Staci Herting; (3) by refusing Bruno's proposed instruction advising the jury that Herting's testimony should be viewed with distrust and (4) by including an improper definition of "delivery" in the instruction on the elements of the charge. The question whether the jury was properly instructed is a

question of law over which we exercise free review. *Nettleton v. Thompson,* 117 Idaho 308, 310, 787 P.2d 294, 296 (Ct.App. 1990); *see, e.g. State v. Lankford,* 116 Idaho 860, 867, 781 P.2d 197, 204 (1989).

■ First, Bruno challenges the instruction given by the district court concerning lost evidence. The proposed instruction which was refused would have advised the jury that they could infer from the loss of evidence that it contained evidence adverse to the state. The instruction which was given regarding the lost evidence advised the jury that the fact that the state lost the evidence could be considered only as one factor, and did not dictate acquittal. The instruction that was given mirrored the instruction on lost evidence approved by the majority in *State v. Fain,* 116 Idaho 82, 96, 774 P.2d 252, 266 (1989), and is in all respects appropriate.

■ Second, Bruno insists that the court erred in failing to instruct the jury that Herting was an accomplice, whose testimony required corroboration under I.C. § 19–2117. The court also rejected one of Bruno's requested instructions which would have advised the jury that "the testimony of an accomplice ought to be viewed with distrust." While Herting did make contact with Bruno and did buy cocaine from him, her actions in purchasing the cocaine do not automatically make Herting an accomplice to Bruno's crime. There was no evidence that Herting and Bruno had a common plan, nor was there a factual dispute compelling the district court to submit the accomplice question to the jury. A "buyer may be convicted for directly committing the act constituting the offense; and he is not, in such a case, any more 'a party to the offense of the seller' than he is where buying is not made illegal." *State v. Murphy,* 94 Idaho 849, 851, 499 P.2d 548, 551 (1972). Accordingly, we hold that the court did not err in refusing Bruno's requested instructions on accomplices.

■ Bruno requested one other instruction that dealt specifically with the testimony of Staci Herting. The instruction stated:

You have heard testimony that Staci Herting, a witness, has received compensation from the state in connection with this case. You should examine Herting's testimony with greater caution than that of ordinary witnesses. In evaluating that testimony, you should consider the extent to which it may have been influenced by the receipt of compensation and benefits from the state.

The jury did hear testimony that Herting was testifying as a state witness in exchange for a favorable plea agreement in her case. Although the court did not give the above instruction requested by Bruno, the court gave a modified instruction as follows:

You have testimony and evidence that Darlene "Staci" Herting, a witness, has entered into a plea agreement as a defendant in another case. In evaluating her testimony, you should consider the extent to which it may have been influenced by the receipt of benefits from the State in that plea agreement.

We are not persuaded that the court erred in giving this instruction in preference to the one requested by Bruno. The court's instruction omitted the awkward phrase: "You should examine Herting's testimony with greater caution than that of ordinary witnesses." The court's instruction adequately heightened the jury's awareness of facts which might have influenced Herting's testimony. They were told they "should" consider these facts in evaluating Herting's testimony. We hold the instruction was proper.

 The last claim of error raised by Bruno relates to the instruction reciting the elements of the crime with which he was charged. Specifically, Bruno argues that he was charged with delivery of cocaine but that the instruction erroneously advised the jury that they could convict Bruno if they found he had "attempted to deliver" cocaine. Bruno's contention is without merit. The instruction followed the statutory language. Idaho Code § 37-2701(f), as amended by 1983 Idaho Sess.Laws, ch. 218 § 2 at 599, defines "deliver" or "delivery" to mean "the actual, constructive, or attempted transfer from one (1) person to another of a controlled substance, whether or not there is an agency relationship." Moreover, the state's evidence showed an actual or constructive delivery of cocaine from Bruno to Herting. We are given no reason to believe that the jury found that Bruno only "attempted to deliver" cocaine.

We affirm the judgment of conviction.

WALTERS, C.J., and WINMILL, J., Pro Tem., concur.