8 P.3d 646

**IDAHO HISTORIC PRESERVATION COUNCIL, INC., an Idaho non-profit corporation; Jeff Urban; and Jim Rudolph, Petitioners–Respondents on Appeal,**

v.

**CITY COUNCIL OF the CITY OF BOISE, Respondent– Appellant on Appeal,**

and

**S–Sixteen Limited Partnership, an Idaho limited partnership, Respondent.**

No. 25049.

Supreme Court of Idaho, Boise, January 2000 Term.

June 30, 2000.

Boise City Attorney's Office, Boise, for appellant. Margery W. Smith argued.

Jim Jones & Associates, Boise, for respondents. John C. McCreedy argued.

SILAK, Justice.

## NATURE OF THE CASE

This is an appeal from judicial review of the appellant Boise City Council's (City Council) decision to grant a certificate of appropriateness to S–Sixteen Limited Partnership (S–Sixteen). The certificate would allow S–Sixteen to demolish the Foster Warehouse Building, which stands within the South Eighth Street Historic District (the District). The district court overturned the City Council's decision to grant the certificate. We affirm the district court's decision.

## I.

## FACTS AND PROCEDURAL BACKGROUND

### A. Facts

The Idaho Preservation of Historic Sites Act (IPHSA), Chapter 46, Title 67 of the Idaho Code, authorizes local governments to engage in programs of historic preservation. The IPHSA provides for the establishment of historic preservation commissions and the creation of preservation districts. *See* I.C. 67–4603; I.C. 67–4607. The IPHSA also prohibits the demolition of buildings located within preservation districts unless the local historic preservation commission approves a certificate of appropriateness. *See* I.C. 67–4608.

On March 25, 1997, S–Sixteen Limited Partnership (S–Sixteen) filed an application with respondent Boise City Historic Preservation Commission (the Commission) for a certificate of appropriateness which would allow S–Sixteen to demolish the Foster Warehouse Building. The Commission denied the application, and S–Sixteen appealed to the City Council, pursuant to section 67–4610 of the Idaho Code and section 2–18–10(E) of the Boise City Code. At the beginning of the appellate hearing, certain members of the City Council stated that they had received numerous telephone calls concerning the issue. One City Council member stated that he had refused to accept any such calls. The hearing proceeded, and the City Council approved the certificate of appropriateness.

## B. Procedural Background

On June 17, 1997, respondent Idaho Historic Preservation Council (IHPC) filed a petition for review of the City Council's decision in the district court. On August 3, 1998, the district court ruled that the City Council erred because it received and considered information outside of the appellate record in granting the certificate of appropriateness.

## II.

## ISSUES ON APPEAL

The appellant presents the following issues on appeal:

A. Whether the standard of review in this appeal is governed by Idaho Rule of Civil Procedure 84 or the Idaho Administrative Procedure Act.

B. Whether the City Council's receipt of phone calls from interested parties and the general public violated the due process standards of a quasi-judicial proceeding.

C. Whether the City Council is held to a standard of judicial disinterestedness in a quasi-judicial proceeding.

## III.

## ANALYSIS

### A. Standard Of Review

The district court determined that the appropriate standard of review in this case

was set forth by the Idaho Administrative Procedure Act (IAPA), Chapter 52, Title 67 of the Idaho Code. The district court cited two planning and zoning cases, *Comer v. County of Twin Falls*, 130 Idaho 433, 942 P.2d 557 (1997), and *Von Jones v. Board of County Commissioners*, 129 Idaho 683, 931 P.2d 1201 (1997), in support of its ruling. The City Council contends that the IAPA does not apply to judicial review of city council decisions concerning historic preservation districts.

The IAPA provides the following definition:

"Agency" means each *state* board, commission, department or officer authorized by law to make rules or to determine contested cases, but does not include the legislative or judicial branches, executive officers listed in section 1, article IV, of the constitution of the state of Idaho in the exercise of powers derived directly and exclusively from the constitution, the state militia or the state board of correction.

I.C. 67–5201 (emphasis added). The language of the IAPA indicates that it is intended to govern the judicial review of decisions made by *state* administrative agencies, and not local governing bodies. There are a few statutory exceptions to this general rule, however. For example, the Local Land Use Planning Act, Chapter 65, Title 67 of the Idaho Code, provides that a person aggrieved by a planning and zoning decision "may within twenty-eight (28) days after all remedies have been exhausted under local ordinances seek judicial review as provided by chapter 52, title 67, Idaho Code." I.C. 67–6521. *See also* I.C. 23–1016(4) (stating that a city council is an "agency" for the purposes of applying the judicial review provisions of the IAPA to a city council decision to deny an application for or the transfer or renewal of a license to sell beer).

Since the legislature has on occasion expressly provided for the application of the IAPA to certain decisions of local governments, we hesitate to apply the IAPA in judicial review situations where the legisla-

ture expressed no such intent. While the IPHSA does provide for judicial review of a city council's decision to grant or deny a certificate of appropriateness, it does not provide for the application of the IAPA to such appeals. We therefore hold that the IAPA does not apply to the present case.

■ Idaho Rule of Civil Procedure 84, which governs judicial review of administrative and local governing bodies, does not provide a specific standard of review. *See Comer,* 130 Idaho at 437, 942 P.2d at 561. We therefore apply the general standard of review for cases in which the district court acts in an appellate capacity. In such cases, this Court reviews the record independently of the district court's decision. *See Chambers v. Kootenai County Bd. of Comm'rs,* 125 Idaho 115, 116, 867 P.2d 989, 990 (1994). Due process issues are generally questions of law. *See, e.g., State v. Garcia,* 132 Idaho 505, 509, 975 P.2d 793, 797 (1999); *In Interest of Baby Doe,* 130 Idaho 47, 51, 936 P.2d 690, 694 (Ct.App.1997); *State v. Bruno,* 119 Idaho 199, 804 P.2d 928 (1990). This Court exercises free review over questions of law. *Mutual of Enumclaw v. Box,* 127 Idaho 851, 852, 908 P.2d 153, 154 (1995).

**B. Whether The City Council's Consideration of Ex Parte Information Violated The Due Process Standards Of A Quasi–Judicial Proceeding.**

■ The district court ruled that the City Council's decision should be overturned because the City Council's receipt of phone calls from concerned citizens violated procedural due process. The City Council argues that there was no due process violation because the subsequent hearing cured any improper influence from the ex parte communications.

■ The test for determining whether a local governing body sits in a quasi-judicial capacity was expressed in *Cooper v. Board of County Commissioners of Ada County,* 101 Idaho 407, 614 P.2d 947 (1980). In that case, this Court stated:

> Basically, this test involves the determination of whether action produces a general rule or policy which is applicable to an open class of individuals, interest (*sic*), or situations, or whether it entails the application of a general rule or policy to specific individuals, interests, or situations. If the former determination is satisfied, there is legislative action; if the latter determination is satisfied, the action is judicial.

*Id.* at 410, 614 P.2d at 950 (quoting *Fasano v. Board of County Comm'rs,* 264 Or. 574, 507 P.2d 23, 27 (1973)). Since S–Sixteen's appeal of the Commission's decision to deny the certificate of appropriateness required the City Council to apply a general rule to specific parties and interests, the City Council was sitting in a quasi-judicial capacity.

■ This Court has held that when a governing body sits in a quasi-judicial capacity, it must confine its decision to the record produced at the public hearing, and that failing to do so violates procedural due process of law. *See Chambers,* 125 Idaho at 118, 867 P.2d at 992 (citing *Cooper,* 101 Idaho at 411, 614 P.2d at 951; *Gay v. County Comm'rs of Bonneville County,* 103 Idaho 626, 629, 651 P.2d 560, 563 (Ct.App. 1982)). This Court has also observed that when a governing body deviates from the public record, it essentially conducts a second fact-gathering session without proper notice, a clear violation of due process. *See Chambers,* 125 Idaho at 118, 867 P.2d at 992. Since the substance of the telephone calls received by the members of the City Council was not recorded or disclosed at the public hearing, the Commission had no opportunity to rebut any evidence or arguments the City Council may have received from the callers. The Court of Appeals has held that prior notice of fact-finding sessions, maintenance of a transcribable record, and the opportunity to present and rebut evidence are elements of "a common core" of procedural due process requirements. *See Gay,* 103 Idaho at 629, 651 P.2d at 563.

The City Council also argues that in *Comer* and *Chambers,* the agency record had been completed when the county commissions in those cases considered the appeal, whereas in the current case, the City Council added to the record that had been produced by the Commission by holding an additional public hearing. The City Council argues

that since the agency record was not yet complete, the City Council was not required to limit its decision on the agency record as required by *Chambers* and *Comer*. This argument is unpersuasive, however, because under the Idaho cases, due process would require that the City Council base its decision not only on the record of the agency from which the appeal was taken, but on the record produced in its own appeal proceedings. "The commissioners, in reaching their decision, must confine themselves to the record as established at the public hearing." *Chambers*, 125 Idaho at 118, 867 P.2d at 992. By considering the input received in the ex parte telephone conversations, the City Council improperly extended its inquiry beyond the limits of the public record.

Under Idaho law, therefore, the City Council's receipt of phone calls violated due process of the law. The City Council argues that the quasi-judicial standard "requires some fine tuning" with respect to ex parte communications. In support of this assertion, the City Council cites two Oregon cases which further address the quasi-judicial standard established by the Oregon Supreme Court in *Fasano v. Board of County Commissioners*, 264 Or. 574, 507 P.2d 23 (1973). This Court quoted portions of the *Fasano* opinion when it adopted the quasi-judicial standard with respect to judicial review of planning and zoning decisions. *See Cooper v. Board of County Commissioners*, 101 Idaho 407, 409–10, 614 P.2d 947, 949–50 (1980) (quoting *Fasano* 507 P.2d at 26–27).[1]

Since *Fasano*, the Oregon Supreme Court has addressed the issue of whether due process of law prohibits ex parte communications between third parties and local government officials considering a matter in a quasi-judicial capacity. In one case, *Tierney v. Duris*, 21 Or.App. 613, 536 P.2d 435 (1975), the Oregon Supreme Court stated that not all ex parte contacts would consti-

tute a violation of the due process standards set forth in *Fasano* :

> [W]e hold there is no violation of *Fasano* when, as in this case: (1) the "ex parte contacts" were not with the proponents of change or their agents, but, rather, with relatively disinterested persons; (2) the contacts only amounted to an investigation of the merits or demerits of a proposed change; and, most importantly, (3) the occurrence and nature of the contacts were made a matter of record during a quasi-judicial hearing so that the parties to the hearing then had an opportunity to respond. As we read *Fasano* its basic requirement is an impartial tribunal; ex parte contacts were just mentioned as one way in which impartiality could be compromised.

*Tierney*, 536 P.2d at 443 (citation omitted).

In *Neuberger v. City of Portland*, 288 Or. 585, 607 P.2d 722 (1980), the Oregon Supreme Court further narrowed *Fasano*'s application to ex parte contacts in quasi-judicial proceedings:

> *Fasano* should not be read as adopting a mechanical rule that any ex parte contact touching on a matter before a tribunal acting quasi-judicially renders the tribunal, or its affected members, unable to act in that matter. To the extent that the language in that opinion can be so understood we disapprove it. The issue is not whether there were any ex parte contacts, but whether the evidence shows that the tribunal or its members were biased.

*Id.* at 725.

Even if this Court were persuaded that *Tierney* and *Neuberger* express the better rule, the requirements of procedural due process under *Cooper* and *Chambers, supra,* were not met. The members of the City Council who accepted phone calls failed to disclose the name and other identifying information[2] of the callers, and also failed to

---

1. Standing alone, the language in *Fasano* would prohibit any ex parte communications: *"Fasano* holds that parties to a quasi-judicial land-use hearing 'are entitled to ... a tribunal which is impartial in the matter—i.e., having had no prehearing or ex parte contacts concerning the question at issue.' " *Tierney*, 536 P.2d at 442 (quoting *Fasano*, 507 P.2d at 30).

2. Other relevant identifying information might include the caller's employment or affiliation with a business or organization with a stake in the matter before the governing body.

**656**

reveal the nature of the conversation, making it impossible for the Commission to effectively respond to the arguments that the callers may have advanced. *See Tierney*, 536 P.2d at 443. While the district court found that it "[did] not appear that any of these telephone contacts improperly influenced any ultimate opinion given by the individual [City] Council members," there was no evidence to support this conclusion because of the City Council's failure to sufficiently identify the callers and provide a general description of what they said in favor of or in opposition to the destruction of the Foster Building. We hold, therefore, that the receipt of phone calls in this case, without more specific disclosure, violated procedural due process.

### C. Whether The City Council Is Held To A Standard Of Judicial Disinterestedness In A Quasi–Judicial Proceeding.

This decision does not hold the City Council to a standard of judicial disinterestedness. As explained above, members of the City Council are free to take phone calls from concerned citizens and listen to their opinions and arguments prior to a quasi-judicial proceeding. In order to satisfy due process, however, the identity of the callers must be disclosed, as well as a general description of what each caller said.

### IV.

### CONCLUSION

We hold that the standard of review established by the IAPA does not apply to this appeal. We also hold that the City Council violated due process by accepting ex parte telephone calls without disclosing the names of the callers and the substance of the callers' comments concerning the proposed destruction of the Foster Building. Neither party has requested attorney fees. Costs are awarded to respondent.

Chief Justice TROUT and Justice WALTERS concur.

Justice KIDWELL, Dissenting as to Part B and Part C.

Local government officials who have been elected have a necessary obligation to be receptive to constituent concerns. I believe that the majority opinion, by imposing judicial burdens on quasi-judicial proceedings, could have a chilling effect on this process. Therefore, I respectfully dissent.

"[D]ue process ... is not a technical conception with a fixed content unrelated to time, place and circumstances" but "is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976) (internal quotations and citations omitted). The U.S. Supreme Court has noted that the "specific dictates of due process" in any given situation require considering "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" and "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335, 96 S.Ct. at 893, 47 L.Ed.2d at 33.

In any decision such as this, city council members will unavoidably receive unsolicited communications from their constituents—not only by telephone but even as they walk down the street. Requiring council members to record the name of each opinionated constituent and the substance of each conversation not only is "unduly burdensome," *Gay v. County Comm'rs*, 103 Idaho 626, 629, 651 P.2d 560, 563 (Ct.App.1982), but also does little to reduce the risk of erroneously depriving a party of its interest. "[T]he integrity of the process and the fairness of the result" should be our principal concern. *Professional Air Traffic Controllers Org. v. Federal Labor Relations Auth. (PATCO)*, 685 F.2d 547, 565 (D.C.Cir.1982). It should be sufficient for city council members to indicate or state at public hearings that they received unsolicited communications from the public at large, that they acquired no information that was not already in the record, and that they were not biased by the communications. *Cf. Neuberger v. City of Portland*, 288 Or. 585, 607 P.2d 722, 725 (1980) (stating that "[t]he issue is not whether there were

any ex parte contacts, but whether the evidence shows that the tribunal or its members were biased.").

Even if due process was violated because certain council members did not make the necessary disclosures and statements, the proper remedy is not to vacate the decision. Rather, the better rule is to consider whether the lack of proper disclosure "irrevocably tainted" the council's decisionmaking process so as to make the ultimate decision unfair either to a party or to the public interest. *PATCO*, 685 F.2d at 564. In making this determination, the Court should look to relevant considerations such as:

> [T]he gravity of the ex parte communications; whether the contacts may have influenced the agency's ultimate decision; whether the party making the improper contacts benefited from the agency's ultimate decision; whether the contents of the communications were unknown to opposing parties, who therefore had no opportunity to respond; and whether vacation of the agency's decision and remand for new proceedings would serve a useful purpose.

*Id.* at 565.

In this case, all the council members who received constituent telephone calls disclosed the existence of the calls at the public hearing. Their statements on the record indicate that they considered the telephone calls cumulative and not of great import. Council member Terterling's statement seems to indicate that the parties were aware of the existence of a flyer encouraging telephone calls on one side of the issue. Council members Mapp and Baker specifically stated that they received telephone calls from both sides of the issue. Because the telephone calls were of little gravity, did not seem to influence the council's decision, did not come from parties, and were disclosed at the public hearing, vacating the decision would serve no useful purpose. Therefore, I would not reverse the city council's decision on the basis of the ex parte contacts.

Justice SCHROEDER concurs.