11 P.3d 1108

**Marcia ROBERTS, Petitioner–Appellant,**

v.

**BOARD OF TRUSTEES, POCATELLO, SCHOOL DISTRICT NO. 25, Respondent.**

No. 24936.

Supreme Court of Idaho, Boise, May 2000, Term.

Sept. 25, 2000.

John E. Rumel, Idaho Education Association, Boise, argued for appellant.

Douglas J. Balfour, Chtd., Pocatello, for respondent. Douglas J. Balfour argued.

TROUT, Chief Justice.

This is an appeal from the Pocatello School District Board of Trustees' (Board) decision terminating Marcia Roberts' (Roberts) employment as a school bus driver.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Roberts was an at-will employee of Pocatello School District No. 25 (School District) and was employed as a bus driver from the late 1980s to January 1996, when she was discharged. Roberts received positive performance reviews in June 1992 and April

1993. In the summer or early fall of 1993, Roberts joined the Pocatello Education Association (PEA). Beginning in June of 1994, Roberts began to receive reviews which were much less complimentary and which reflected parent and student complaints concerning Roberts' use of profanity with students.

On December 16, 1993, School District transportation director Jerry Skaggs (Skaggs) sent a letter to Roberts which stated he was recommending to personnel director, Gordon Waford (Waford), that Roberts be placed on probation. In his letter, Skaggs referred to: (1) Roberts' unauthorized stop at a Maverick convenience store which made Roberts late in picking up students who became wet and cold; (2) Roberts' rude and discourteous remarks to Head Start personnel; (3) Roberts' kicking a student off the bus without authority; and (4) Roberts' use of profane language with students which had resulted in complaints. Waford sent Roberts a letter on December 22, 1993, stating she would be placed on probation through the end of the 1993–1994 school year.

Roberts filed a grievance on January 26, 1994 and alleged she had been placed on probation in retaliation for joining the PEA. On June 16, 1994, Roberts filed a grievance concerning her June 8, 1994 performance review and alleged the negative evaluation and extension of probation were in retaliation for the January 26, 1994 grievance.

A three member arbitration panel held a meeting on June 2, 1994, to determine whether the School District violated Roberts' right to join the PEA and whether the School District placed Roberts on probation in retaliation for her membership in the PEA. The panel concluded the evidence was insufficient to determine the district's sole motivation for placing Roberts on probation was her participation in the PEA. The panel also concluded Roberts' unauthorized stop at the Maverick convenience store seemed logical and she did not have an interpersonal relations problem. The panel recommended that probation was too severe a reprimand and Roberts was taken off probation shortly thereafter.[1]

1. Prior to mid-August, 1994, Roberts and several other bus drivers filed a lawsuit against the

Roberts' supervisor, Craig Leiby (Leiby), wrote a memo to Roberts on October 18, 1994, concerning problems with Roberts' attitude and professionalism and referenced an incident in which Roberts used the term "bullshit" and became defiant and uncooperative with Skaggs. In addition, numerous written and oral complaints from parents were received against Roberts which reflected Roberts' use of profane language with students. George Bateman (Bateman), Roberts' immediate supervisor, collected comments from twenty students who rode Roberts' bus and similarly expressed complaints regarding Roberts' use of profanity and mistreatment of students.

Bateman prepared a written warning on July 26, 1995. Bateman warned Roberts that if additional complaints concerning Roberts' mistreatment of students were received, Roberts would be terminated. Leiby also issued Roberts a written warning on August 27, 1995. Bateman sent a letter to Waford in January 1996 regarding the parent complaints, his discussions with Roberts, his prior warnings to her, and recommended Roberts' employment be terminated. Waford terminated Roberts' employment on January 22, 1996. Roberts submitted a grievance concerning her termination, contending the termination was retaliatory in response to her union activities. Bateman denied the grievance on January 31, 1996 (Step One hearing). Roberts appealed that decision to the Superintendent of Schools who designated Waford as the hearing officer. (Step Two hearing). Waford concluded there was no connection between his decision to terminate her and Roberts union activities. Roberts then appealed the denial to a three-person arbitration panel which included Waford, one person designated by Roberts, and one neutral member.

A hearing was held and the arbitration panel issued its decision, concluding Roberts had been improperly dismissed, should be reinstated with back pay and benefits, and had been terminated as harassment for her PEA activities. The decision was drafted by

the panel's neutral member. Roberts' designee concurred in the opinion and Waford dissented, noting a lack of evidence establishing that Roberts' discharge violated public policy. The School District appealed the arbitration panel's decision to the Board. One week later, on August 28, 1996, after considering the arguments of attorneys representing Roberts and the School District, the Board overturned the arbitration panel's decision, finding the School District had cause to terminate Roberts' employment.

Roberts filed a complaint against the School Board and later filed an Amended Petition for Judicial Review. The Board filed a Motion to Determine Agency Record, seeking an order that the record before the Board and the district court would include all exhibits presented to the arbitration panel. Roberts filed an Objection to Agency Record on the same day, arguing the record should consist only of those documents provided to the Board at its August 28, 1996 meeting, *i.e.*, the arbitration panel's decision and the Board's Finding of Fact overturning the panel's decision. The district court determined the agency record included "all Exhibits submitted to the arbitration panel." The district court issued its Memorandum Decision and Order on July 1, 1998, affirming the Board's Findings of Fact and Resolution overturning the arbitration panel's decision and denying Roberts' Amended Petition for Judicial Review. This appeal followed.

## II.

### STANDARD OF REVIEW

As we recently held in *Idaho Historic Preservation Council, Inc. v. City Council of the City of Boise*, 134 Idaho 651, 8 P.3d 646, although Idaho Rule of Civil Procedure 84 governs judicial review of administrative and local governing bodies, the Rule does not provide a specific standard of review. *Id.* at 654, 8 P.3d at 649; *Comer v. County of Twin Falls*, 130 Idaho 433, 437, 942 P.2d 557, 561 (1997). Instead, the Rule

School District, Waford and Skaggs to prevent the district from harassing them for joining the PEA. Judge William Woodland entered his Judgment in Roberts' civil action against the School

District on June 13, 1996, permanently enjoining the School District from discriminating against any person because of union membership.

states "[t]he scope of judicial review on petition from an agency ... shall be as provided by law." I.R.C.P. 84(u). We therefore apply the general standard of review for cases in which the district court acts in an appellate capacity. *Idaho Historic Preservation Council*, 134 Idaho at 654, 8 P.3d at 649. In such cases, we review the record independently of the district court's decision. *Id.* Additionally, in this case, the scope of judicial review of the school board's decision is expressly set forth in I.C. § 33–517(2)(e). That provision provides the Board's decision may be set aside only upon a finding "(i) [t]hat the findings of fact are not based on substantial, competent evidence; (ii) [t]hat the board of trustees has acted without jurisdiction or in excess of its powers; (iii) [t]hat the findings by the board of trustees as a matter of law do not support the decision." I.C. § 33–517(2)(e).

## III.

## DISCUSSION

A. **The Board acted in excess of its powers by failing to comply with the statutory procedure set forth in I.C. § 33–517(2).**

 As a preliminary matter, we note that Roberts is an at-will employee of the school district. Ordinarily, an at-will employee "may be terminated at any time for any or no reason which does not violate public policy...." *Ray v. Nampa School Dist. No. 131,* 120 Idaho 117, 120, 814 P.2d 17, 20 (1991). Here, Roberts has alleged her termination was in retaliation for her union activities, an allegation which, if true, would constitute a violation of public policy. We have previously held an employee must provide more than mere allegations regarding a violation of public policy. *Id.* at 121, 814 P.2d at 21. In this case, as noted in the factual summary, two different independent bodies have found at least some merit to Roberts' allegations in the past. Thus, we believe she has carried her burden of presenting more than mere allegations regarding the cause of her termination.

 Roberts argues the Board violated her state and federal due process rights when it overturned the decision of the arbitration panel. However, we do not believe it is necessary to reach the issue of whether Roberts' constitutional rights were violated. Even if Roberts was not entitled to procedural due process prior to her termination, she was nevertheless entitled to grieve that termination through the grievance procedure provided by I.C. § 33–517. Implicit in the requirement that the Board provide a grievance process is that the process will provide the employee with a meaningful opportunity to be heard in a fair and impartial manner. Without such a requirement, the grievance process provided by I.C. § 33–517 becomes a meaningless formality rather than a legitimate means of appealing employment related decisions.

We addressed a somewhat similar situation in *Brown v. Caldwell School Dist. No. 132,* 127 Idaho 112, 898 P.2d 43 (1995). In *Brown,* a non-tenured teacher sued the school district for violations of the statutory procedure set forth in I.C. § 33–514. We noted that because Brown was a non-tenured teacher, she was not entitled to procedural due process before she could be terminated. However, the Board was still required to comply with the statutory procedure contained in I.C. § 33–514. Under I.C. § 33–514, if a school board decides not to reemploy a non-tenured teacher, the board is required to give a statement of reasons for that decision and the teacher is given the opportunity for an informal review of that decision by the Board. In *Brown,* the District had informed Brown its decision not to reemploy her was based "on the Board's belief that the school district's interest would be best served by not continuing a contract relationship with you." *Id.* at 116, 898 P.2d at 47. We held that this statement did not comply with the requirements of I.C. § 33–514. In so holding, we first noted the general rules of statutory construction that a statute should be interpreted so as to give effect to all of its provisions, and that we do not presume that the legislature performed an idle act by enacting a meaningless provision. *Id.* at 117, 898 P.2d at 48. Applying these rules to the statute in *Brown,* we held the statement of reasons given by the Board did not meet the

requirements of I.C. § 33–514 because it did not convey any real information as to why Brown's contract was not renewed. Thus, "Brown was given no *meaningful opportunity* to show why the decision was incorrect." *Id.* (emphasis added). We therefore reversed the decision of the district judge on this issue.

■ Although the case at hand deals with a different statutory procedure than the one in *Brown,* we believe the same rationale applies. It is clear the statutory grievance procedure set forth in I.C. § 33–517 is intended to give an employee the opportunity to have an adverse employment decision reviewed, and perhaps modified. However, if the review is not done in a fair, impartial, and meaningful manner, this procedure becomes a useless exercise. Thus, because, as is discussed below, the Board did not provide Roberts with a meaningful opportunity to be heard in a fair and impartial manner, it also necessarily failed to comply with the statutory procedures set forth in I.C. § 33–517(2). Thus, we hold the Board exceeded its authority in terminating Roberts and vacate its decision.

The grievance procedure contained in I.C. § 33–517 provides a multi-step process by which a noncertificated employee may appeal matters related to his or her employment. Specifically, Section 33–517(2) provides the following grievance procedure:

(a) A noncertificated employee of the district may file a grievance about any matter related to his employment....

(b) If a noncertificated employee files a grievance, the employee shall submit the grievance in writing to his or her immediate supervisor ...

(c) If the noncertificated employee is not satisfied with the response of the immediate supervisor ... the employee may appeal the grievance to the superintendent of the district or the superintendent's designee ...

(d) If the noncertificated employee is not satisfied with the response of the superintendent or his designee ... the noncertificated employee may request a review of the grievance by a hearing panel ...

(e) The panel's decision shall be the final and conclusive resolution of the grievance unless the board of trustees overturns the panel's decision by resolution at the board of trustees' next regularly scheduled public meeting or unless ... either party appeals to the district court ...

Roberts began the grievance procedure by submitting a grievance to her immediate supervisor, Bateman. Following Bateman's denial of her grievance, Roberts appealed to the superintendent of the school district. The superintendent appointed Director of Personnel Waford, the person who made the decision to terminate Roberts, as his designee for the appeal. After Waford denied Roberts' grievance, she then appealed to the arbitration panel. Idaho Code § 33–517(2)(d) states that the arbitration panel shall consist of three persons, "one (1) designated by the board of trustees, one (1) designated by the employee, and one (1) agreed upon by the two (2) appointed members...." Roberts accordingly designated Peggy Park, the Board designated Waford, and Peggy Park and Waford designated Rhonda Rivera. Thus, Waford, the person who made the initial decision to terminate Roberts, and who had been sued by Roberts for anti-union activities, participated in the grievance process at two different levels. While the statute does not specifically prohibit Waford's involvement, we believe such involvement creates, at a minimum, the appearance of bias in the process. Thus, we hold Waford's involvement at two different levels of the grievance procedure denied Roberts the benefit of a fair and impartial process implicit in the provision of a statutory grievance procedure.

■ Even if Waford's involvement did not deny Roberts a fair and impartial process, Roberts was also denied a meaningful opportunity to be heard by the Board's failure to review the record before overturning the arbitration panel's decision. As a general rule, there is a presumption of regularity in the performance of official duties by public officers. *See, e.g., Horner v. Ponderosa Pine Logging,* 107 Idaho 1111, 1114, 695 P.2d 1250, 1253 (1985). However, "this presump-

tion can be rebutted by a production of evidence showing [the Board] failed to review the record." *Macrae v. Smith*, 126 Idaho 788, 790, 890 P.2d 739, 741 (1995). Here, there is sufficient evidence in the record to rebut the presumption the Board properly considered the record from the arbitration hearing. Roberts has presented the affidavit of her attorney during the grievance proceedings which states at no time during the Board's open session did he see any documents or exhibits from the arbitration hearing. Additionally, the Board's order reversing the arbitration panel's decision simply states the Board's findings of facts are based upon the "presentations and arguments of both parties...." In response, the Board submitted the affidavit of Waford which states the record was "available" to the Board during its deliberations. However, in order to provide Roberts with a meaningful opportunity to be heard, it is incumbent upon the Board to actually review the *evidence*, including testimony and exhibits, presented by both parties and make a fair and impartial decision based upon that evidence. Where, as here, it is unclear as to what, if any, evidence from the record the Board relied on in making its decision, the Board has failed to provide the grievant with a meaningful opportunity to be heard and to respond to the charges against her. Additionally, because it is impossible to determine what evidence the Board used in making its decision, we cannot determine whether the decision was based on substantial and competent evidence in the record. Thus, we vacate the decision of the Board overturning the arbitration panel's decision, and remand the case to the Board for further proceedings.

**B. Attorney Fees.**

On appeal, the School District has requested attorney fees pursuant to I.C. § 12–121. However, because the School District is not the prevailing party on appeal, the District is not entitled to an award of fees under that statute.

## IV.

### CONCLUSION

For the reasons set forth above, we vacate the Board's decision terminating Roberts' employment with the school district and remand the case to the Board for further proceedings consistent with this opinion.

Justices SILAK, SCHROEDER and WALTERS concur.

Justice KIDWELL, dissenting.

It appears to me that the record indicates the School Board followed the procedure mandated by I.C. § 33–517, the statutory grievance procedure. Further, I believe Marcia Roberts, an at-will employee, was given a meaningful opportunity to be heard in a fair and impartial manner. Therefore, I respectfully dissent.

The majority finds it somehow suspect that Gordon Waford, the Director of Personnel, was involved in two levels of the grievance procedure. However, I.C. § 33–517(2)(d) does not prohibit the involvement of an employee familiar with the dispute. In fact, this provision specifically allows the board of trustees to appoint one person to the panel. Waford may very well have been a logical candidate as he was not only the Director of Personnel, but also was familiar with the parties and their respective positions. It should be noted that a school board may be functioning under limited resources and may not have the ability to fill a spot on an arbitration panel with a professionally qualified person unfamiliar with the situation.

The majority finds that Roberts was denied a meaningful opportunity to be heard due to the Board's failure to review the record from the arbitration panel hearing. However, the record does not establish that the Board did, in fact, fail to review the record. The district court specifically found it likely that the Board did review the record. The district court noted that even though there was no recording or transcription of the hearing panel's proceedings, the exhibits presented to the hearing panel were available to the School Board before it made it's decision. Additionally, the School Board had ample opportunity to review the hearing panel's decision which contained a detailed listing and explanation of the evidence present-

ed before the hearing panel. Finally, the detail and contents of the Board's decision demonstrate that the Board was aware of the exhibits contained in the record and suggests that the Board reviewed the record prior to issuing it's resolution.

Under I.C. § 33–517, the board of trustees is given the power to overturn a decision made by the grievance panel. The School Board acted within the power granted by the statute when it decided to terminate Roberts. This decision was not only based upon substantial and competent evidence, but was in accordance with the School Board's duty to protect the children in the school district. Although Robert's argued that her termination was in retaliation for her association with the union, there was virtually no evidence in support of this position. As noted by the district court, the School Board's findings of fact clearly showed that the true reason behind Robert's termination was her inadequate performance as a school bus driver.

By not giving credence to the School Board's decision, this Court has failed to apply the well-established presumption of regularity in the performance of official duties by public officers. Accordingly, I believe the school district board of trustees' decision terminating the employment of this at-will employee should be affirmed.