2016 JUN 13 AM 9:46
COURT OF APPEALS DIV I

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 72807-5-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| ISRAEL FABIAN SANCHEZ, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 13, 2016 |

SCHINDLER, J. — A jury convicted Israel Fabian Sanchez of two counts of rape of

a child in the first degree domestic violence. Sanchez seeks reversal. Sanchez claims

a single reference to the child as "the victim" and overruling the defense objection

deprived him of the right to a fair trial. In the alternative, Sanchez challenges imposition

of the lifetime no-contact order prohibiting contact with "other family members." We

affirm the conviction but remand to address on the record the parameters of the no-

contact order under the "reasonably necessary" standard.

FACTS

In March 2013, six-year-old J.F. lived with her mother, her mother's boyfriend

Israel Fabian Sanchez, her five-year-old half brother, and her two-year-old half sister in

an apartment in Bellevue. Sanchez is the biological father of the two younger children.

On the evening of March 7, 2013 when J.F.'s mother opened the door to the bedroom, she saw Sanchez with an erect penis, "putting it in my little girl's, in the behind part." J.F. was on a rug with her pants pulled down. Sanchez had ejaculated on J.F. The two younger children were next to J.F. and Sanchez. J.F.'s mother took her to the bathroom and washed Sanchez's semen off her body.

Sanchez became angry and threatened to leave the family. J.F.'s mother knew she could not support her children financially if Sanchez left. But J.F.'s mother told her that if it ever happened again, "next time we would have to leave."

In the summer of 2013, the family moved to a one-bedroom apartment in Bellevue. On the evening of March 28, 2014, J.F.'s mother was at work and Sanchez was home with the children. After the three children fell asleep on the living room floor, Sanchez picked up J.F. and carried her to the bedroom. Sanchez pulled down her pajama bottoms, put saliva on his penis, and put his penis "in and out" of her "bottom." After the rape, Sanchez left to pick up J.F.'s mother from work.

The next morning, J.F.'s mother noticed J.F. sitting with her hands "between her legs," looking "[a]fraid." J.F.'s mother asked J.F. "if something bad had happened" and reminded her "the promise that I had made to her before I would fulfill this time." J.F. told her mother she did not want to tell her what had happened because Sanchez threatened "to hit her." After J.F.'s mother told J.F. that she would not allow Sanchez to "go anywhere near her," J.F. told her mother that Sanchez raped her. J.F.'s mother and the three children walked to a community center to get help.

Bellevue Police Department Detective James Brack and Officer Robin Peacey went to the apartment and interviewed J.F.'s mother. The police collected the pajamas

J.F. was wearing and the blankets from her bed. Detective Brack took J.F., her mother, and the two other children to Seattle Children's Hospital.

Sexual Assault Nurse Examiner Elaine Beardsley performed a forensic examination of J.F. Beardsley collected swabs from J.F.'s mouth, fingertips, genitals, and rectum. J.F. told Beardsley that Sanchez had put saliva on his penis and then put it in her "bottom." When asked to point to her bottom, J.F. pointed to her vagina and rectum. When asked if this had happened before, J.F. replied, "Much times."

On March 31, a child interview specialist at the King County Prosecutor's Office interviewed J.F. During the interview, J.F. described the rape the evening of March 28 and an earlier rape that occurred when she was five or six years old. J.F. said that on March 28, Sanchez had put his "thing" "on" and "in" her "bottom." J.F. also told the interviewer that Sanchez had put his penis "in and out" of her "bottom and front" when she was about five or six years old.

The State charged Sanchez with two counts of rape of a child in the first degree domestic violence in violation of RCW 9A.44.073 and RCW 10.99.020. Sanchez pleaded not guilty.

Sanchez filed a number of motions in limine including a motion to "prevent the State or its witnesses from referring to [J.F.] as a 'victim.'" During the hearing on the motions in limine, defense counsel asked if the court had a general "practice with respect to that issue." The court responded the "prosecutor shouldn't use that terminology" and "police officers should be cautioned," but "if one of the witnesses

3

suddenly blurts out that terminology, and it's an understandable thing, it doesn't produce a mistrial."

> I mean it's the sort of thing that I think the prosecutor shouldn't use that terminology in opening statement or at the outset in the case. If — if one of the witnesses suddenly blurts out that terminology, and it's an understandable thing, it doesn't produce a mistrial. But, yeah, police officers should be cautioned, but, again, if they — if they mistakenly cross that line, it's not the worst thing that's ever happened. You know, objection will be lodged, the court would sustain it and instruct the jurors to disregard it.

The State called a number of witnesses to testify at trial including Officer Peacey, Sexual Assault Nurse Examiner Beardsley, the child interview specialist, Washington State Patrol Crime Lab (WSPCL) forensic scientist Amy Jagmin, J.F.'s mother, and J.F.

The court admitted into evidence and played for the jury the video recording of the interview of J.F. with the child interview specialist.

During the testimony of Officer Peacey, the prosecutor asked about the three young children at the apartment. In response, Officer Peacey referred to J.F. as "the victim." The court overruled the defense objection.

WSPCL forensic scientist Jagmin testified she performed a DNA[1] analysis of the swabs taken from J.F. Jagmin testified the sperm found on the swabs collected from J.F.'s rectum and the exterior of her genitals "matched the DNA typing profile obtained for Israel Fabian-Sanchez."

The jury found Sanchez guilty of two counts of rape of a child in the first degree in violation of RCW 9A.44.073. By special verdict, the jury found the State proved beyond a reasonable doubt that at the time of the crimes, Sanchez and J.F. were "members of the same family or household."

---

[1] Deoxyribonucleic acid.

At sentencing, the State recommended a lifetime no-contact order to protect J.F. and her mother. J.F.'s mother stated Sanchez abused her and her children and she feared Sanchez would take the children away. J.F.'s mother asked the court to impose a "protective order for life, for me and my [three] kids."

The court imposed a concurrent standard range sentence of 160 months for the two convictions for rape of a child in the first degree domestic violence and a no-contact order for "LIFE." The judgment and sentence states Sanchez shall have no contact with J.F.,[2] her mother, and "other family members" for life.

## ANALYSIS

Sanchez argues the reference to J.F. as "the victim" was an impermissible opinion on guilt and in overruling his objection, the court impermissibly commented on the evidence in violation of his right to a fair trial. Sanchez cites no authority to support his assertion that referring to someone as a "victim" constitutes an opinion on guilt.

As a general rule, no witness may offer testimony in the form of an opinion regarding the defendant's guilt or veracity. State v. Quaale, 182 Wn.2d 191, 199, 340 P.3d 213 (2014); State v. Kirkman, 159 Wn.2d 918, 927, 155 P.3d 125 (2007). Testimony regarding guilt unfairly prejudices the defendant because it invades the exclusive province of the jury to make an independent determination of the relevant facts. Quaale, 182 Wn.2d at 199. "In general, testimony deemed to be an opinion as to a defendant's guilt must relate directly to the defendant." State v. Sanders, 66 Wn. App. 380, 387, 832 P.2d 1326 (1992); State v. Borsheim, 140 Wn. App. 357, 375, 165 P.3d 417 (2007). To determine whether a statement constitutes improper opinion testimony,

---

[2] In the judgment and sentence, J.F. is referred to as "J.H." with her date of birth. We use J.F. for consistency.

we may consider the type of witness, the specific nature of the testimony, the nature of the charges, the type of defense, and the other evidence before the trier of fact. State v. Montgomery, 163 Wn.2d 577, 591, 183 P.3d 267 (2008).

Here, the record shows that in one instance, Officer Peacey referred to J.F. as "the victim" to differentiate her from her two half-siblings. The prosecutor asked Officer Peacey if she "remember[ed] [the] approximate ages" of the three children in the apartment. Officer Peacey responded, "There was the youngest girl, I think she was two. The boy was probably around four, and then the victim, I believe, was seven."

> Q.     Besides the mother, was anybody else home?
> A.     There were three small children in the home.
> . . . .
> Q.     Do you remember their approximate ages?
> A.     There was the youngest girl, I think she was two. The boy was probably around four, and then the victim, I believe, was seven.

Defense counsel objected "to that characterization." The court overruled the objection, stating, "The answer stands."

The prosecutor's questions did not solicit an opinion on Sanchez's guilt and Officer Peacey's response did not constitute impermissible opinion testimony on Sanchez's guilt.

Further, any error was harmless beyond a reasonable doubt. A constitutional error is harmless beyond a reasonable doubt if the "untainted evidence is so overwhelming that it necessarily leads to the same outcome." In re Pers. Restraint of Cross, 180 Wn.2d 664, 688, 327 P.3d 660 (2014).

Here, the overwhelming untainted evidence necessarily leads to the same outcome. J.F. testified about the details of the two rapes. J.F.'s mother testified she witnessed Sanchez raping J.F. on March 7, 2013. Sexual Assault Nurse Examiner

6

Beardsley testified about the consistent description J.F. provided during the forensic examination about the March 28, 2014 rape. In the video-recorded interview with the child interview specialist, J.F. also consistently described the two rapes. WSPCL forensic scientist Jagmin testified the swabs taken from J.F.'s rectum and the exterior of her genitals contained Sanchez's sperm. The untainted evidence establishes the one reference to J.F. as the victim was harmless beyond a reasonable doubt. See State v. Alger, 31 Wn. App. 244, 249, 640 P.2d 44 (1982) (in context of entire trial, "one reference to 'the victim' by the trial judge" was harmless beyond a reasonable doubt).

Sanchez also claims the court impermissibly commented on the evidence by overruling his objection using the phrase, "The answer stands." Sanchez asserts that by using this language, the court "expressly endorsed" Officer Peacey's testimony.

Article IV, section 16 of the Washington Constitution "prohibits a judge from conveying to the jury his or her personal attitudes toward the merits of the case." State v. Becker, 132 Wn.2d 54, 64, 935 P.2d 1321 (1997); State v. Brush, 183 Wn.2d 550, 556-57, 353 P.3d 213 (2015). An impermissible comment on the evidence is one that "conveys to the jury a judge's personal attitudes toward the merits of the case or allows the jury to infer from what the judge said or did not say that the judge personally believed the testimony in question." State v. Swan, 114 Wn.2d 613, 657, 790 P.2d 610 (1990). But a court does not comment on the evidence by ruling on an objection or giving a reason for that ruling. State v. Pockert, 53 Wn. App. 491, 495-96, 768 P.2d 504 (1989) (court's ruling on objection does not constitute comment on evidence); Swan, 114 Wn.2d at 657 (court does not comment on evidence by ruling on objection and informing counsel of its decision); In re Det. of Pouncy, 144 Wn. App. 609, 622, 184

P.3d 651 (2008) ( "A court does not comment on the evidence simply by giving its reasons for a ruling.").

The court used the phrase "the answer stands" to overrule objections at least nine times during trial. By using the same phrase to overrule the defense objection to Officer Peacey's reference to J.F. as the victim, the court did not abuse its discretion or comment on the evidence. We also note the court instructed the jury not to be concerned with the reasons for its rulings and to disregard any statement that appeared to express the court's personal opinion about the evidence. See State v. Elmore, 139 Wn.2d 250, 276, 985 P.2d 289 (1999) (any comment on the evidence was cured by instruction to disregard the comment). "We presume that juries follow all instructions given." State v. Stein, 144 Wn.2d 236, 247, 27 P.3d 184 (2001).

In the alternative, Sanchez challenges imposition of the no-contact order prohibiting contact with "other family members" for life. Sanchez contends the order violates his fundamental right to parent his biological children.[3]

"A defendant's fundamental rights limit the sentencing court's ability to impose sentencing conditions." In re Pers. Restraint of Rainey, 168 Wn.2d 367, 377, 229 P.3d 686 (2010). Natural parents have a fundamental right in the "care, custody, and management" of their children. Santosky v. Kramer, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). If a sentencing condition interferes with a fundamental right, the condition must be "reasonably necessary to accomplish the essential needs of the State and public order." State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). A court may not impose a no-contact order between a parent and child without

---

[3] Sanchez does not challenge the no-contact order as it relates to J.F. and J.F.'s mother.

"address[ing] the parameters of the no-contact order under the 'reasonably necessary' standard." Rainey, 168 Wn.2d at 381-82.

The State concedes the court failed to address on the record the "reasonably necessary" standard with respect to Sanchez's two biological children, and the phrase "other family members" is overbroad because it could apply to any person related to Sanchez. We accept the State's concession as well taken and remand to amend the judgment and sentence. On remand, the court should address on the record the parameters of the no-contact order under the "reasonably necessary" standard. Rainey, 168 Wn.2d at 381-82.

We affirm Sanchez's conviction but remand to address the parameters of the no-contact order.

WE CONCUR: