712 P.2d 1180

In the Matter of the APPROVAL OF
the ZONING OF IDAHO
FROZEN FOODS.

IDAHO FROZEN FOODS, Appellant,

v.

MEANDER POINT HOMEOWNERS
ASSOCIATION, Respondent.

COUNTY OF TWIN FALLS, Appellant,

v.

MEANDER POINT HOMEOWNERS
ASSOCIATION, Respondent.

Nos. 15323, 15324.

Supreme Court of Idaho.

Jan. 6, 1986.

Steven K. Tolman, Twin Falls, for appellant Idaho Frozen Foods.

Jeffrey A. Hosking, Twin Falls County Prosecuting Attorney's Office, for appellant Twin Falls County.

G. Lance Salladay, Boise, for respondent.

SHEPARD, Justice.

Idaho Frozen Foods operates a large potato processing plant in Twin Falls which employs some 800 people, and as a by-product of that processing procedure the plant discharges waste water. That waste water was discharged into the Twin Falls city sewage treatment facility, but in March 1981 the city notified Idaho Frozen Foods that it could no longer treat its waste water after July 1, 1981, without a substantial capital contribution by the corporation. Idaho Frozen Foods then began to research alternatives to its waste treatment plan with the city.

Idaho Frozen Foods developed a plan to pre-treat the waste water in its plant and then transport that water through a system of underground pipes approximately eight miles to a 550-acre site in a deep canyon near the confluence of Rock Creek and the Snake River. That site is approximately two miles west of the city sewerage treatment facility and is located almost directly below the canyon rim on which is

located Meander Point subdivision. On that site it was proposed to construct a rapid infiltration system in which the water would be applied to 38 earthen basins, each of more than an acre in size, which would be infiltrated and the water treated by the soil structure beneath the basins. The system was designed to minimize potential for odors. As the water dropped through pipes down the steep canyon wall it would also be used for hydroelectric generation. Grasses were to be planted in the basins which would be irrigated by the waste water, and cattle would graze over the entire 550-acre site.

Because of the substantial financial commitment and the large scale of the proposed project, Idaho Frozen Foods requested the Twin Falls county planning and zoning commission to examine its proposed use to determine its compliance with zoning ordinances. The proposed site falls within a zone designated as "outdoor recreation." It should be noted that Idaho Frozen Foods did not request a conditional use permit, a variance, or a rezone. On September 3, 1981, Idaho Frozen Foods appeared before the Twin Falls planning and zoning commission asking an interpretation of the outdoor recreation zone. The minutes of the commission reflect the commission's view that the proposal of Idaho Frozen Foods complied with the county zoning requirements. In reliance thereon Idaho Frozen Foods proceeded to acquire the 550-acre site, and otherwise develop the project.

Idaho Frozen Foods also contacted the Idaho Department of Health and Welfare, Division of Environment, to obtain its approval of the project. The Department of Health and Welfare contacted the Twin Falls planning and zoning commission requesting assurance that the project would be permitted under the then existing zoning. The Department's inquiry was discussed at a June 10, 1982 planning and zoning commission meeting which was attended by, and comments received from, representatives of Idaho Frozen Foods and representatives of the Meander Point Homeowners Association. Thereafter the planning and zoning commission unanimously reaffirmed its previous decision and indicated to the Department of Health and Welfare that Idaho Frozen Foods' project was permitted under the then zoning.

The homeowner's association on the 25th day of July, 1982, filed an appeal from the "decision" of the zoning commission to the Twin Falls board of county commissioners. A public hearing was held, and by a unanimous written decision dated July 1, 1982, the board of county commissioners upheld the decision of the planning and zoning commission that Idaho Frozen Foods' project was in compliance with zoning requirements.

On July 6, 1982, Idaho Frozen Foods applied to the planning and zoning commission for a "zoning permit" to encompass the construction of the eight miles of pipeline as well as the construction of the earthen filtering basins. The planning and zoning commission held a public meeting on July 22, 1982, following which, on July 29, 1982, the zoning permit was issued to Idaho Frozen Foods. Thereafter, on August 18, 1982, the homeowners association appealed the decision of the zoning commission to grant the zoning permit to the Twin Falls board of commissioners. The county commissioners unanimously affirmed the planning and zoning commission.

In the meantime, on July 22, 1982, the homeowners association had filed an appeal from the July 1, 1982 decision of the board of county commissioners to the district court pursuant to I.C. § 67–5215. No appeal was, nor has been, filed to the district court from the decision of the county commissioners to issue the zoning permit, nor was the homeowners association's appeal to the district court amended to encompass the board of county commissioners' decision that issued the zoning permit.

Construction was undertaken on the Idaho Frozen Foods project and completed in January 1983 at a cost of approximately 2.5 million dollars, and since that time the project has been in full use. The appeal of the homeowners association was not argued before the district court until June of

1983. Following that hearing the court found that the project was not a permitted use within the zoning scheme but rather constituted a change in the authorized land use. Therefore the court remanded the cause to the board of county commissioners to reconsider the matter in conformity with the due process requirements in cases *involving a change in authorized land use.*

Both Twin Falls County and Idaho Frozen Foods appeal from that decision of the district court. We note at this juncture that the homeowners association has not appeared in this appeal by way of furnishing a brief to this Court. Although no brief had been filed, counsel for the homeowners association was nevertheless permitted to appear at oral argument and present rebuttal argument.

It was contended in the district court and again here that no justiciable controversy had been presented to the district court since the decision of the planning and zoning commission affirmed by the board of county commissioners that the project of Idaho Frozen Foods was in conformance with then zoning requirements, was only a type of advisory opinion, and that although the homeowners association had filed an appeal to the board of county commissioners of the zoning commission's issuance of a zoning permit, no appeal from that decision of the board of county commissioners had been taken to the district court. However tempting it might be to dispose of the matter on the basis of a non-justiciable question having been presented to the district court, we nevertheless decline that opportunity believing firmly that this procedural imbroglio necessitates final disposition for a variety of reasons, not the least of which is that the project is no longer proposed but has been constructed and in operation for nearly three years.

It is well argued that the homeowners association was remiss in its failure to appeal the county commissioners' decision ordering the issuance of a zoning permit which resulted in the ultimate construction of the project—a project which the county argues is necessary to the well-being of a large number of its citizens. On the other hand it might be argued that albeit Idaho Frozen Foods' project had long since been completed and placed in use, that rather than taking this appeal from the decision of the district court, Idaho Frozen Foods might have been well advised to return to the county zoning commission and the board of county commissioners to obtain a conditional use permit or a rezone. It would appear that the result of such action was fore-ordained. To do otherwise than approve, the county authorities would have had but one of two alternatives upon a denial of a rezone or conditional use permit, *i.e.,* (1) to have required the dismantling and cessation of the project and the re-establishment of Idaho Frozen Foods' effluent into the city's waste water treatment located a mere two miles away from the existing site, or (2) the closure of Idaho Frozen Foods' processing plant. Obviously neither alternative would have been palatable to the county authorities.

The district court, in its decision, emphasized the due process requirements laid down by this Court in *Cooper v. Board of County Commissioners of Ada County,* 101 Idaho 407, 614 P.2d 947 (1980) and in *Gay v. County Commissioners of Bonneville County,* 103 Idaho 626, 651 P.2d 560 (Ct.App.1982), which are required of a planning and zoning authority in cases involving a change in hitherto authorized land use. We do not disagree with that analysis of the district court. However, we do not deem those requirements necessarily dispositive in the instant case since under the analysis of the district court that result assuredly and necessarily followed from the district court's decision that the I.F.F. project indeed constituted a change in the authorized land use and that the decisions of the planning and zoning commission and the board of county commissioners holding otherwise was erroneous. We must then examine the decisions of the board of county commissioners holding that the project of I.F.F. was a permitted use within the zoning ordinances and the decision of the district court holding that the project was not such a permitted use.

The decision of the district court states, "It is apparent that there was a misunderstanding relative to the application of agricultural zoning within the outdoor recreation area." That comment was evidently directed at the proceedings of the various administrative boards wherein consideration was given to specific provisions of the ordinance defining the "outdoor recreation zone." Therein "principal designated uses" included "C. the growing of crops and grazing of livestock and buildings related thereto." Other portions of the outdoor recreation zone provided that the restrictions of the agriculture zone should apply, the lot requirements of the agricultural zone should apply, the accessory use building provisions of agricultural zone should apply, the eave projection provisions of the agricultural zone should apply, and "minimum lot size shall be same as agricultural zone." Hence, we agree with the administrative boards that any reasonable interpretation of the ordinance indicates at least a substantial overlap between the agricultural zone and the outdoor recreation zone, and most probably a substantial identity of uses. And to the extent that the decision of the district court is contrary, it is to that extent reversed.

We note further that the outdoor recreation zone ordinance indicates as principal designated uses or uses which may be granted by a review committee: public parks and playgrounds, dams, power plants and associated facilities, reservoirs, wells, pipelines, public utility buildings and structures, agricultural uses, one-family dwellings or mobile homes, dude ranches and fisheries, sleeping accommodations, food facilities, other commercial, semi-commercial or organizational enterprises [relating to recreation], subdivisions, and planned unit developments. In short, permitted or considered within the outdoor recreation zone are many uses beyond those ordinarily contemplated in "recreation." As we view the allowable or permitted uses, they include nearly all uses except those commercial uses unrelated to recreation, and

do not permit industrial uses except hot road mix plants.

It is clear that the district court did not, in its decision, consider the proceedings before the two administrative boards wherein evidence was presented concerning the intended use by I.F.F. which in part at least was within the contemplation of the outdoor recreation zone ordinance, *i.e.*, the growing of crops and raising of livestock and facilities related thereto.

The record of the proceedings indicates that extensive engineering detail was presented to the administrative boards, that input was received from the Department of Health and Welfare, that attention was drawn to other such projects in the state of Idaho, and that details of the agricultural operation were discussed at length. There was presented and discussed the degree of effluent that would be discharged, the amount of water and the time it would remain on the surface, the nutrients available therefrom, and their impact upon the growing of very specific agricultural crops, *i.e.*, specific kinds of grasses and the grazing available therefrom. Also discussed at length was the odor problem which might or might not result from the discharge of the waste water, (not sewerage). Likewise, the proceedings before the administrative boards indicate that consideration was given to the fact that within that same outdoor recreation zone, and a relatively short distance therefrom, was located and operating the city's sewerage treatment plant.

While all of these matters are reflected within the administrative proceedings before the boards, and were therefore before the district court, no discussion thereof is contained in the district court's decision. Rather, the district court focused only upon "if there had been any intention to have a use as dissimilar to those as a waste water disposal system, there would have been clearly some wording that would more closely encompass it." The district court then noted that the airport zone included

"sewerage disposal and treatment plants" and such specificity could have been contained within the outdoor recreation zone ordinance if such use had been intended.

We cannot agree with the narrow construction of the district court as contrasted with the extensive testimony and consideration of the proposal given by the administrative bodies. In *Bone v. City of Lewiston*, 107 Idaho 844, 693 P.2d 1046 (1984), this Court reviewed at length the law as enunciated in previous decisions of this Court, *i.e., Workman Family Partnership v. City of Twin Falls, Hill v. Bd. of County Commissioners*, 101 Idaho 850, 623 P.2d 462 (1981), *Walker-Schmidt Ranch v. Blaine County*, 101 Idaho 420, 614 P.2d 960 (1980), *Cooper v. Bd. of County Commissioners*, all pertaining to the standard for a district court review in appeals of zoning decisions. There we stated,

"We find 67–5215(b-g) to be a complete, detailed, and exhaustive remedy upon which an aggrieved party can appeal an adverse zoning decision. We also find that the legislature's intent in outlining the scope of review and the bases upon which a court may reverse a governing body's zoning decision to be clear. We find no evidence that the legislature intended other avenues of appeal to be available or that bases for reversal or the scope of review should be broader than that found in § 67–2515(b-g)." *Bone*, 107 P.2d at 847–848, 693 P.2d at 1049–1050.

▆▆▆ Although *Bone* pertains to a petition for rezone, whereas here the question is a permitted use under an existing zone, we do not deem such to be a distinction. In the instant case the appellants from the adverse decision of the county commissioners, *i.e.*, Meander Point, appealed from an interpretive decision of the county commissioners. As indicated herein, no appeal was taken from the actual granting of the construction permit. The question thus presented to the district court was governed by I.C. § 67–2515(b-g), and hence the court was bound by the record made before the administrative agency. As stated in *Bone v. City of Lewiston, supra*, one of six available grounds had to be found for the Court to reverse agency, *i.e.*, that the agency's decision is (1) a violation of constitutional or statutory provisions; (2) in excess of the agency's statutory authority; (3) made upon unlawful procedures; (4) affected by error of law; (5) clearly erroneous in view of the evidence in the record; or (6) arbitrary or capricious or characterized by abuse of discretion. Our review of the agencies discloses no basis for its decision being held in violation of constitutional or statutory provisions, in excess of its authority, made upon unlawful procedure, or arbitrary or capricious or characterized by abuse of discretion. Likewise, we do not perceive where any error of law affected the decision of the agencies that the project fell within a permitted use under the outdoor recreation ordinance. We are then left with the only available ground for a reversal of the agencies' decisions, *i.e.*, whether it was clearly erroneous in view of the evidence in the record. We have reviewed the record made by the agencies, and cannot conclude that the decision based thereon was clearly erroneous. We have made that decision since the district court indulged in a statutory analysis rather than an analysis of the evidence in the record.

In *Workman Family Partnership v. City of Twin Falls*, 104 Idaho 32, 39, 655 P.2d 926, 933 (1982), it was well said that this Court's decision in *Cooper*,

"... cannot be read as authorizing district courts to interfere with the substantive decision making process in rezoning cases such as this one. To sanction such interference in the ordinary case would undermine the important role local agencies play in the land use planning process and possibly negate meaningful participation by the public in the decision making process." (Citation omitted.)

In *Workman*, the opinion closed by cautioning that its holding was "in this particu-

lar case on these peculiar facts ..." So we close our opinion by cautioning that it is based today in this particular case and on these peculiar facts. Here the appeal was taken not from the final action of the agency, but rather from an interim advisory ruling of the administrative agencies. No appeal was taken from the final granting of the zoning permit; extensive hearings were held, some of which were public, and in almost all of which the protestants appeared and were permitted extensive testimony and argument; the project has long since been completed and operative.

The decision of the district court is reversed, and the decision of the board of county commissioners is reinstated.

Costs to appellants.

DONALDSON, C.J., BAKES and HUNTLEY, JJ., and McFADDEN, J. Pro Tem., concur.