730 P.2d 1009

**SOUTH FORK COALITION, an unincorporated association, Petitioner-Respondent,**

v.

**BOARD OF COMMISSIONERS OF BONNEVILLE COUNTY, Idaho; said Board consisting of Clyde Burtenshaw, A. Wylie Snarr and Thomas Loertscher, Respondents.**

**J.R. HAYS & SONS, INC., Intervenor-Appellant,**

v.

**SOUTH FORK COALITION, an unincorporated association, Petitioner-Respondent.**

No. 16356.

Supreme Court of Idaho.

Dec. 29, 1986.

Gregory S. Anderson of Anderson, Pike & Bush, Idaho Falls, for intervenor-appellant J.R. Hays & Sons, Inc.

C. Timothy Hopkins, and Lary S. Larson of Hopkins, French, Crockett, Springer & Hoopes, Idaho Falls, for petitioner-respondent South Fork Coalition.

BAKES, Justice.

The appellant, J.R. Hays & Sons, Inc., appeals from a district court order which overturned the Bonneville County commissioners' preliminary approval of a planned unit development on Hays's property. Hays raises, as a preliminary procedural issue, whether the respondent South Fork Coalition had standing to challenge the commissioners' decision at the district

court level. While it appears that South Fork Coalition does have standing, *Glengary-Gamlin Protective Ass'n, Inc. v. Bird*, 106 Idaho 84, 675 P.2d 344 (Ct.App. 1983), the record is clear that the order of the Bonneville County Board of County Commissioners from which the appeal was taken to the district court was not a "final decision" within the meaning of I.C. § 67–5215(a), and accordingly was not an appealable order.

The Administrative Procedures Act provides in Section 67–5215(a) that "a person *who has exhausted all administrative remedies* available within the agency and who is aggrieved by a *final decision* in a contested case ... is entitled to judicial review under this act."

The Bonneville County ordinance provides:

"Section 1–2520. *Approval in Principle by the Commission.*

"1. Within thirty (30) days after the public hearing the Commission shall review the *preliminary development* plan to determine if it is consistent with the intent and purpose of this Ordinance; whether the proposed development advances the general welfare of the community and neighborhood and whether the benefits, combination of various land uses and the interrelationship with the land uses in the surrounding area justify the deviation from standard district regulations. *The Commission's approval in principle of the preliminary development plan shall be necessary before an applicant may submit a final development plan. Approval in principle shall not be construed to endorse a precise location of uses, configuration of parcels or engineering feasibility.*" BCZO § 1–2520 (emphasis added).

The Board of County Commissioners has not rendered any final decision on the application, and all administrative remedies have not been exhausted. The board has only "approved in principle the proposed planned unit development," retaining jurisdiction to either approve or deny the final plan after they have reviewed it and after

they have "placed such other restrictions [on it] as it deems advisable in the general welfare of the community and neighborhood...."

The appeal by the South Fork Coalition was therefore premature, and the district court should have dismissed the appeal. *See State, Dept. of Law v. One 1955 Willys Jeep*, 100 Idaho 150, 595 P.2d 299 (1979) (holding that where an appeal was taken from a non-appealable order, the appeal should be dismissed, even by the Court *sua sponte*, for lack of jurisdiction over the appeal).

Accordingly, we reverse the decision of the district court and remand with directions for the district court to dismiss the appeal. No costs allowed.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ., concur.

HUNTLEY, Justice, concurring specially.

I concur in the majority opinion, but would further note that were the matter properly before us, I would agree with the dissent of Justice Shepard that the record clearly establishes that the preliminary determination of the Board of Commissioners should be affirmed and the decision of the district court reversed.

DONALDSON, C.J., concurs.

SHEPARD, Justice, dissents.

It is my view that the only issue before this Court is whether a planned unit development may be located in an area zoned as G–1 Grazing, in Bonneville County. A planned unit development located within such zone had been submitted for the approval of Bonneville County Planning and Zoning Commission. That Commission denied the application and an appeal was taken to the Bonneville County Board of Commissioners. The County Commissioners held that a PUD may be located within any zoning district, and found that approval of the PUD would promote orderly development as required by the zoning ordinance and the county's comprehensive plan. The County Commissioners also found that

they were not amending the existing zoning or passing a new zoning ordinance, nor were they reclassifying the land.

That decision of the Board of County Commissioners was in turn appealed to the district court which reversed the decision of the County Commissioners holding that such decision was not authorized under the provisions of the zoning ordinance, and was arbitrary, capricious and unlawful. The district court held that the decision of the County Commissioners was inconsistent with the intent and purpose of agricultural land use and that the findings of fact of the Commission were not supported in the record. This appeal results.

Hence, in my view the dispositive issue at all stages of the proceeding has been and remains whether, under the zoning ordinances of Bonneville County, the planned unit development may be located in an area zoned for grazing. If that decision of the district court is correct, the dispute is resolved and I see no purpose to be served in remanding the matter to the Board of County Commissioners to consider a detailed plan of the project if it cannot be located within a grazing zone. The decision of the majority hinges on a technicality and will result in a waste of all of the time and effort invested by the parties in the administrative and court procedures which have been followed to this point, and an additional waste of administrative and judicial resources in the future.

In *State v. McNichols*, 62 Idaho 616, 115 P.2d 104 (1941), this Court held that "[W]here a written instrument expressing the action of the court is an order or a judgment is to be determined by its contents and substance, not by its title." *See also Howell v. Reimann*, 77 Idaho 84, 288 P.2d 649 (1955); *Swinehart v. Turner*, 36 Idaho 450, 211 P. 558 (1922). Thus, if the instrument "ends the suit," *Farmers Equipment Co. v. Clinger*, 70 Idaho 501, 222 P.2d 1077 (1950), "adjudicates the subject matter of the controversy," *Doolittle v. Morley*, 76 Idaho 138, 278 P.2d 998 (1955), and represents a "final determination of the rights of the parties," *Pulver v.*

*State*, 92 Idaho 627, 448 P.2d 241 (1968), the instrument constitutes a final judgment regardless of its title. *See Southland Produce Co. v. Belson*, 96 Idaho 776, 536 P.2d 1126 (1975); *Viani v. Aetna Ins. Co.*, 95 Idaho 22, 501 P.2d 706 (1972).

An examination of the "contents and substance" of the Commission's findings of fact and conclusions of law indicates that the Commission had rendered a final decision. The Commission's decision was that of approval of appellant's development plan. Therefore the question which should have been examined by this Court on appeal was whether the Commission's findings were either clearly erroneous or arbitrary and capricious, or "affected by other error of law," in light of the Bonneville County zoning ordinance. I.C. § 67–5215(g)(5), (6).

Hays owns approximately 3,000 acres of land in the Antelope Flats area of Bonneville County, and desires to develop a portion of that land by way of a 550 acre planned unit development for 66 single family resident units, a golf course and private boat ramp. As noted above, the land is zoned G-1 Grazing, and the permitted uses within such a zone are set forth in Bonneville County's zoning ordinance section 1-2302 as follows:

(1) Any use permitted in the A-1 Zone [the Agricultural Zone].

(2) Outdoor advertising signs.

(3) Manufacturing, testing and storage of explosive chemicals and other materials or products generally considered to be of a hazardous nature, provided such uses are located at least three hundred (300) feet from the outside boundary of the owner's property, at least thirteen hundred twenty (1320) feet from any public road or highway and at least three hundred (300) feet from any building used for human occupancy.

(4) Sanitary land fill operations when approved by the Board of County Commissioners.

The permitted uses in A–1 Agricultural Zone are delineated in BCZO § 1–702 and include "dwellings."

Planned unit developments are defined by section 1–2501(12) of the Bonneville County zoning ordinance as:

[A]n area with specified minimum contiguous acreage of five acres or more to be developed as a single entity according to a plan containing one or more residential clusters, which may include appropriate commercial, or public or quasi-public uses primarily for the benefit of the residential development.

Section 1–2502 of the Bonneville County zoning ordinance sets forth the purposes of a PUD as follows:

It shall be the policy to guide a major development of land and construction by encouraging planned unit developments (PUD) to achieve the following:

1. A maximum choice of living environments by allowing a variety of housing and building types and permitting an increased density per acre and a reduction in lot dimensions, yards, building setbacks and area requirements;

2. A more useful pattern of open space and recreational areas and, if permitted as part of the project, more convenience in the location of accessory commercial uses, industrial uses and services;

3. A development pattern which preserves and utilizes natural topography and geologic features, scenic vistas, trees and other vegetation and prevents the disruption of natural drainage patterns;

4. A more efficient use of land than is generally achieved through conventional development resulting in substantial savings through shorter utilities and streets;

5. A development pattern in harmony with land use density, transportation and community facilities objectives of the Comprehensive Plan.

Planned unit developments have been described as "floating zones" and under section 1–2505(2) of the Bonneville County zoning ordinance a "PUD may be located within any zoning district." Under section 1–2503 of the Bonneville County zoning

ordinance, planned unit developments have been given priority over any other section of the zoning ordinance:

Section 1–2503. PRIORITY OF PUD

In all cases where there is a conflict with the language or requirements of this chapter dealing with planned unit developments and the language or requirements of any other chapter or section of this ordinance the language or requirements of this chapter shall be controlling.

Hence I deem it clear that planned unit developments are favored, and may be located within any zone, including the G–1 Grazing Zone.

The district court concluded as a matter of law that a PUD located within a particular zone is limited to the uses allowed for that zone, relying on section 1–2507 of the Bonneville County zoning ordinance, however, we are cited to no such limiting language, and I would hold that the district court's conclusion is contrary to I.C. § 67–6515.

Section 1–2520 of the Bonneville County zoning ordinance provides:

Section 1–2520. *Approval in Principle by the Commission.*

1. Within thirty (30) days after the public hearing the Commission shall review the preliminary development plan to determine if it is consistent with the intent and purpose of this Ordinance; whether the proposed development advances the general welfare of the community and neighborhood and whether the benefits, combination of various land uses and the interrelationship with the land uses in the surrounding area justify the deviation from standard district regulations. The commission's approval in principle of the preliminary development plan shall be necessary before an applicant may submit a final development plan. Approval in principle shall not be construed to endorse a precise location of uses, configuration of parcels or engineering feasibility.

The findings of fact, conclusions of law and decision of the Board of County Commissioners demonstrates that they considered

each of the requirements of section 1–2520. Summarized, those findings state:

(a) the land in question "was not suitable for farming or grazing," and a change in use is desirable and that the most logical use for the property was for recreational development;

(b) the proposed summer recreational use was consistent with the comprehensive plan;

(c) the BCZO mandates that the county recognize natural environmental goals and attempts to be consistent with those goals. South Fork is classified a recreational river, and the Hays development fits in with that scheme;

(d) the Hays PUD will provide a new type of recreational facility and summer recreational housing not previously available in the county; that the present recreational facilities of Bonneville County "are utilized at a near optimum rate, [and] additional recreational facilities are needed."

(e) the burden of preserving open space is not to be put on private landowners;

(f) the PUD will expand recreational opportunities in the county, and additional recreational development is needed;

(g) the PUD does not infringe on current viable agricultural land and includes buffers to ensure reaching the goal of minimal impact;

(h) the plan provides for a 150-foot green belt along the river, as required by the comprehensive plan, and the PUD design will preserve most of the Hays property in its natural state.

This Court has held that a governing body charged to zone "in accordance with" under 67–6511, must make a factual inquiry into whether the requested zoning ordinance or amendment reflects the goals of, and takes into account those factors in, the comprehensive plan in light of the present factual circumstances surrounding the request. *Bone v. City of Lewiston,* 107 Idaho 844, 693 P.2d 1046 (1984).

The district court questioned the findings of the Commission stating:

The only reason that is indicated in the record before the court for failing to consider the agricultural land use objectives and policies is the conclusion of the commissioners that the land in question was not suitable for farming or grazing. The court has found this conclusion is not supported by probative evidence in the record and it was fundamental error of law for the commissioners to consider the land in question in isolation from the larger tract of 3000 acres of which it is a part. R., at 117.

Evidently the district court believed that although the 550 acres encompassed by the PUD application was not suitable for farming and grazing, nevertheless it had to be considered in conjunction with the remaining 3,000 acres also owned by the applicants. We find nothing within the Local Planning Act, I.C. §§ 67–6501 *et seq.*, or the Bonneville County zoning ordinance to require such a consideration of all the land owned by the applicant beyond and above that contained in the application for the PUD. Hence, I would hold that the Commission correctly focused on the 550 acres in the proposed PUD rather than all land owned by the applicant, and that the district court erred in ruling to the contrary.

It is my view that the Bonneville County Commission did make "a factual inquiry into ... the present factual circumstances surrounding the request." *Bone v. City of Lewiston, supra.* The findings of the Commission demonstrate extensive examination into the proposed planned unit development in light of the comprehensive plan and the zoning ordinance. Also the Commissioners followed the procedural requirements of the Local Planning Act, I.C. §§ 67–6501 *et seq.* I would hold that the decision of the County Commissioners was neither clearly erroneous nor arbitrary and capricious, and that the decision was expressly authorized by the provisions of the Bonneville County zoning ordinance.

In *Workman Family Partnership v. City of Twin Falls,* 104 Idaho 32, 655 P.2d 933 (1982), we held that a district court

**94**

cannot "interfere with the substantive decision making process in rezoning cases ... To sanction such interference in the ordinary case would undermine the important role local agencies play in the land use planning process and possibly negate meaningful participation by the public in the decision making process." *See also Idaho Frozen Foods v. Meander Point Homeowners Association,* 109 Idaho 1072, 712 P.2d 1180 (1986). I.C. § 67–5215(g) provides that, "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact."

I would conclude that the findings of fact of the Commission are supported by the evidence, and that the findings, conclusions and decision of the Board of County Commissioners were not "clearly erroneous" or "arbitrary and capricious" and hence I would reverse the decision of the district court and remand to the Board of County Commissioners for further proceedings and approval or denial of a final development plan when submitted by the applicants.