188 P.3d 900

**HIGHLANDS DEVELOPMENT CORPORATION, Plaintiff–Appellant,**

v.

**CITY OF BOISE, Respondent.**

No. 33174.

Supreme Court of Idaho, Boise, October 2007 Term.

June 18, 2008.

Davison, Copple, Copple & Cox, Boise, for appellant. Jay Gustavsen argued.

Boise City Attorney's Office, Boise, for respondent. Amanda C. Horton argued.

EISMANN, Chief Justice.

Highlands Development Corporation asked the City of Boise to annex two parcels of real property. The City did so, but gave the parcels a different zoning classification than the Corporation desired. It sought judicial review of the City's actions. The district court held that it had no authority to vacate the annexation and that the Corporation must apply for a rezone and submit a devel-

opment proposal before it could challenge the zoning classification given by the City in conjunction with the annexation. The district court therefore dismissed this appeal. Highlands Development Corporation then appealed to this Court. Because there is no statute authorizing judicial review of the City's actions in this case, we dismiss the appeal.

## I. FACTS AND PROCEDURAL HISTORY

Highlands Development Corporation (Highlands) owned two parcels of real property located in Ada County (County) adjacent to the boundary of the City of Boise (Boise). One of the parcels consisted of 35.58 acres and the other consisted of 52.63 acres. The existing County zoning applicable to the parcels would permit six dwelling units per acre. Highlands approached Ada County about developing the properties and was informed that it must first seek to have the City annex the properties. Highlands applied to the City for annexation on November 7, 2000. In its application, it requested that upon annexation the properties be zoned R–3, which would permit twenty dwelling units per acre. On January 8, 2001, the Boise City Planning and Zoning Commission voted to recommend annexation of the properties with the initial zoning classification being A (Open), which permits one dwelling unit per acre. On February 5, 2001, it adopted the written findings of fact supporting that recommendation.

On March 20, 2001, the Boise City Council approved the requested annexation with a zoning designation for the parcels of A (Open). On April 3, 2001, the City adopted findings of fact and conclusions of law supporting the annexation and initial zoning. On August 28, 2001, the City adopted an ordinance annexing the two parcels and zoning them A (Open).

On April 26, 2001, Highlands filed this action seeking judicial review of the City's action.[1] The matter was first heard by the district court. Highlands argued that the

1. Because we hold that Highlands had no right to seek judicial review, we do not address whether the petition for judicial review was premature

where the ordinance annexing and zoning the properties had not yet been adopted.

district court should vacate the annexation because Highlands had been coerced by the County into applying for the annexation and that the court should order the City to assign the properties a zoning classification comparable to the County zoning that had applied prior to the annexation. The district court ruled that it had no authority to vacate the annexation and that any issue regarding zoning is not ripe until an application to rezone the properties in conjunction with a development plan has been presented to the City and denied. The district court therefore dismissed the appeal on May 16, 2006. Highlands then timely appealed to this Court.

## II. ANALYSIS

### A. Did the District Court Err in Dismissing the Petition for Judicial Review?

■ In its brief, Highlands contended that it had the right to seek judicial review pursuant to Idaho Code § 67–5273.[2] The City did not raise the issue of whether Highlands had a right to judicial review in this case. "Where an appeal is taken from a non-appealable order, the appeal should be dismissed, even by the court *sua sponte,* for lack of jurisdiction over the particular appeal." *State, Dept. of Law Enforcement v.*

2. The pleading filed by Highlands to initiate this action is entitled "Notice of Appeal, and Complaint and Demand for Jury Trial." Highlands may have been attempting to combine a petition for judicial review with a civil action for declaratory judgment. When dismissing the action, the district court stated that the complaint outside the appeal did not state a claim. On appeal to this Court, however, Highlands has apparently challenged only the dismissal of its petition for judicial review.

When describing these proceedings in its opening brief, Highlands stated:

The Petitioner *appealed* to the District Court of the Fourth Judicial District pursuant to Idaho Code § 76–5373(3). The Honorable D. Duff McKee dismissed *the appeal* on May 15, 2006 on the grounds and for the reasons that there was no basis for appeal. Petitioner appealed to this Court on June 20, 2006. (Emphasis added.)

Highlands also stated in its opening brief, "The Petitioner would contend that the District Court erred in dismissing the *Administrative Appeal* from the Boise City Council.... Accordingly, the Court should vacate the District Court's decision in dismissing the Petitioner's *appeal* of the City's action." (Emphasis added.)

*One 1955 Willys Jeep, V.I.N. 573481691,* 100 Idaho 150, 152, 595 P.2d 299, 301 n. 1 (1979); *accord, South Fork Coalition v. Board of Comm'rs of Bonneville County,* 112 Idaho 89, 90, 730 P.2d 1009, 1010 (1986).

■ Idaho Code § 67–5273 is part of the Idaho Administrative Procedures Act (IAPA). That Act does not grant the right to review decisions made by counties or cities. As we explained recently in *Giltner Dairy, LLC v. Jerome County,* 145 Idaho 630, 632, 181 P.3d 1238, 1240 (2008):

"The IAPA and its judicial review standards apply to agency actions." *Gibson v. Ada County Sheriff's Dept.,* 139 Idaho 5, 7, 72 P.3d 845, 847 (2003). "Counties and city governments are considered local governing bodies rather than agencies for purposes of the IAPA." *Id.* "The language of the IAPA indicates that it is intended to govern the judicial review of decisions made by state administrative agencies, and not local governing bodies." *Idaho Historic Preservation Council, Inc. v. City Council of City of Boise,* 134 Idaho 651, 653, 8 P.3d 646, 648 (2000).

■ In order to obtain judicial review of the City's annexation and initial zoning[3] of

In its reply brief to this Court, Highlands begins by arguing that the "reasons set forth in Idaho Code § 67–5279 are the basis for the Appellant's request for *judicial review.*" (Emphasis added.) It then lists the arguments it has made on this appeal and states, "These are the exact premises the Appellant relied upon when it requested *judicial review* of these allegations and the actions of the Respondent." (Emphasis added.)

Highlands then asserts that "the District Court would not even entertain the issues of the *appeal* because it had predetermined, without hearing any testimony or evidence, that the *appeal* did not form a basis for a general civil complaint.... The Appellant was never given the proper hearing to address the allegations and request for *judicial review* arising out of the actions of Respondent with respect to Idaho Code § 67–5279." (Emphasis added.) In the closing paragraph of its reply brief, Highlands states, "The Appellant is simply requesting to be heard. The District Court adamantly refused to review and rule on their *appeal* other than to state that they had no basis for *appeal.*"

property, there must be a statute granting the right of judicial review. *Gibson,* 139 Idaho at 8, 72 P.3d at 848. At the time the petition for judicial review was filed on April 26, 2001, there was no statute granting the right to obtain judicial review of the City's decisions at issue in this case. The legislature later enacted Idaho Code § 50–222 which permits judicial review of the decision of a city council to annex and zone lands under certain circumstances. Ch. 333, § 2, 2002 Idaho Sess. Laws 939, 944. However, that statute did not take effect until July 1, 2002, over a year after the petition for judicial review was filed in this case.

■ The Local Land Use Planning Act (LLUPA) permits judicial review of some land use decisions made by a governing board. However, there is no provision granting judicial review of the initial zoning classification applied to annexed property. LLUPA grants the right of judicial review to persons who have applied for a permit required or authorized under LLUPA and were denied the permit or aggrieved by the decision on the application for the permit. I.C. § 67–6519. LLUPA mentions special use permits, I.C. § 67–6512; subdivision permits, I.C. § 67–6513; planned unit development permits, I.C. § 67–6515; variance permits, I.C. § 67–6516; and building permits, I.C. § 67–6517. It does not mention any permit that would relate to the initial zoning of land annexed by a city. LLUPA also grants the right of judicial review to persons having an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing development. I.C. § 67–6521. This case does not involve the granting or denial of a permit authorizing development.

The dissent argues that Idaho Code § 67–6519 grants Highlands the right to file a petition for judicial review because it was "aggrieved by a decision." As we said in *Giltner,* "Idaho Code § 67–6519 applies to applications for a permit required or authorized under Chapter 65 of Title 67, Idaho Code." 145 Idaho at 633, 181 P.3d at 1241. There was no application for a permit in this case. The application filed by Highlands with the City was entitled, "annexation/rezone application."

The dissent argues that in prior cases we have granted judicial review of "zoning permits" and have characterized action establishing a zoning classification as a zoning permit. The cases cited do not support that assertion. The permit at issue in *Ralph Naylor Farms, LLC v. Latah County,* 144 Idaho 806, 808, 172 P.3d 1081, 1083 (2007), was a conditional use permit, it was not a zoning classification. As we stated:

> In January of 2005, POW presented the County with a petition requesting that the County impose a moratorium prohibiting the acceptance, review or approval of all conditional use permits or zoning permits related to mineral resource extraction within Latah County.....
>
> On June 27, 2005, Naylor Farms attempted to file an application with the Latah County Planning and Building Department for a conditional use permit in order to conduct mineral extraction on its property.

Likewise, *In re the Approval of the Zoning of Idaho Frozen Foods,* 109 Idaho 1072, 712 P.2d 1180 (1986), did not involve the zoning of property. It involved the issuance of a construction permit. Compare, "No appeal was, nor has been, filed to the district court from the decision of the county commissioners to issue the zoning permit," 109 Idaho at 1073, 712 P.2d at 1181, with, "As indicated herein, no appeal was taken from the actual granting of the construction permit," 109

3. The term "initial zoning" means the City's act in zoning the properties in conjunction with the annexation. A city has no authority to zone property in the county, and vice versa. *Reardon v. Magic Valley Sand and Gravel, Inc.,* 140 Idaho 115, 90 P.3d 340 (2004). Although the properties had been zoned by Ada County prior to the annexation by the City, "the county zoning ordinance ceased to apply once the land in question was removed from the county's jurisdiction by annexation." *Ben Lomond, Inc. v. City of Idaho Falls,* 92 Idaho 595, 599, 448 P.2d 209, 213 (1968). That rule is based upon the proposition "that local subdivisions of government are separate sovereignties and that the ordinances of one political subdivision are of no effect in another." *Id.* Thus, when a city annexes property, it must zone the property also.

Idaho at 1076, 712 P.2d at 1184. In fact, this Court noted, "Idaho Frozen Foods might have been well advised to return to the county zoning commission and the board of county commissioners to obtain a conditional use permit or a rezone." The dissent has not pointed to any case in which a zoning application is called an application for a permit.

The dissent's argument that we should stretch the meaning of the word "permit" in Idaho Code § 67–6519 to include zoning applications would effectively amend Idaho Code § 50–222. In specified circumstances, Section 50–222 permits judicial review of "[t]he decision of a city council to annex *and* zone lands." (Emphasis added.) Had that statute been in effect, it would not have granted Highlands the right to file a petition for judicial review of the zoning because Highlands did not object to the annexation. Under the dissent's expansive interpretation of a permit, a landowner who could not challenge the zoning under Section 50–222 could do so.

The dissent also argues that this opinion "will prevent property owners from obtaining judicial review of decisions downzoning their property." It will not. As we recognized in *McCuskey v. Canyon County Commissioners*, 128 Idaho 213, 912 P.2d 100 (1996), such landowners can seek relief in an independent action.

The only statute in LLUPA mentioning annexation is Idaho Code § 67–6525. It provides, "Concurrently or immediately following the adoption of an ordinance of annexation, the city council shall amend the plan and zoning ordinance." However, this statute does not grant any right of judicial review regarding either the annexation decision or the zoning decision. Absent any statute granting Highlands the right to seek judicial review of the City's decision to annex and zone Highlands' properties, this appeal must be dismissed because this Court lacks jurisdiction to decide the issues raised.

**B. Is Either Party Entitled to an Award of Attorney Fees Pursuant to Idaho Code § 12–117?**

Both Highlands and the City seek an award of attorney fees pursuant to Idaho Code § 12–117(a). That statute provides,

Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

■ Highlands cannot be awarded attorney fees under the statute because it is not a prevailing party. The City is a prevailing party on the appeal. Since there is no statute authorizing Highlands's petition for judicial review, it acted without a reasonable basis in fact or law. We therefore award the City attorney fees on appeal. *Giltner Dairy*, 145 Idaho at 633–34, 181 P.3d at 1241–42.

## IV. CONCLUSION

This appeal is dismissed. We award costs, including a reasonable attorney's fee, to respondent.

Justices W. JONES and HORTON concur.

J. JONES, J., dissenting.

Although I would deny relief to Highlands on the merits, I dissent from the Court's opinion because it will effectively foreclose review of quasi-judicial zoning decisions under the Idaho Administrative Procedure Act, I.C. §§ 67–5201–5292 (IDAPA). The opinion will prevent property owners from obtaining judicial review of decisions downzoning their property and preclude unhappy neighbors from challenging decisions to upzone adjacent property. Historically, this Court has extended review to quasi-judicial zoning decisions. *See, e.g., In Re Application for Zoning Change*, 140 Idaho 512, 96 P.3d 613 (2004) (review for denial of application to rezone real property); *Evans v. Teton County*, 139 Idaho 71, 73 P.3d 84 (2003) (review of decision permitting upzoning of real property). And, aside from the question of IDAPA review, Highlands asserts constitutional challenges to the City's decision that have not been addressed in the opinion.

## I. Administrative Appeal

The Court's decision appears to be hinged upon the language in I.C. § 67–6519, which allows an applicant denied a permit to seek judicial review under IDAPA. Review is not limited, however, to applicants denied a permit. The language reads, "*An applicant* denied a permit or *aggrieved by a decision* may ... seek judicial review under the procedures provided by [IDAPA]." (emphasis supplied) Thus, judicial review is not confined to those applicants who are denied a permit but is extended, also, to those applicants who are aggrieved by a decision. By the very language of the statute, Highlands qualifies for judicial review of its application for zoning.[4]

Furthermore, the word "permit" is not defined in the Local Land Use Planning Act, I.C. §§ 67–6501–6588 (LLUPA). The Court's opinion would exclude judicial review for zoning decisions, based on the fact that those are not specifically called permits in LLUPA. The primary provision of LLUPA pertaining to judicial review is I.C. § 67–6521, which allows an affected person aggrieved by a decision to seek judicial review. I.C. § 67–6521(1)(b). An affected person is defined as "one having an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the development." I.C. § 67–6521(1)(a). While it is true that a zoning decision is not specifically labeled as a permitting decision, this Court has frequently characterized a decision establishing a zoning classification as a zoning permit. *See, e.g., Ralph Naylor Farms, LLC v. Latah County,* 144 Idaho 806, 808, 172 P.3d 1081, 1083 (2007) ("conditional use permits or zoning permits related to mineral resource extraction"); *In the Matter of the Approval of the Zoning of Idaho Frozen Foods,* 109 Idaho 1072, 1073–74, 712 P.2d 1180, 1181–82 (1986) (application to determine that proposed project was in compli-

ance with zoning regulations repeatedly characterized as "zoning permit"). The crux of the matter is stated in *Boise City v. Blaser,* 98 Idaho 789, 791, 572 P.2d 892, 894 (1977), where the Court recited that a party had "made substantial expenditures in good faith reliance on the county *zoning permit* (which the city concedes is the equivalent of its own *unconditional permit to build* )." (emphasis added). That is, a zoning classification is a permit to proceed with any development allowed under the classification.[5] That is why we characterize a use authorized under a zoning classification as a "permitted use." When a local governing body assigns a zoning classification to land or changes the zoning classification, it is making a blanket permitting decision with regard to the land, whether we call the decision a zoning permit or a zoning decision. Where such action is quasi-judicial in nature, a matter which will be dealt with below, there is no basis for denying judicial review to an aggrieved party.

The key provision of LLUPA is I.C. § 67–6511, which requires local governments to adopt zoning districts and to establish standards for land usage and development within such districts. Section 67–6511(a) provides for amendment of the zoning ordinance and states, "An amendment of a zoning ordinance applicable to an owner's lands or approval of conditional rezoning or denial of a request for rezoning may be subject to the regulatory taking analysis provided for by section 67–8003, Idaho Code, consistent with the requirements established thereby." Where the Legislature required that an amendment to the zoning ordinance, as applied to an owner's lands, may be subjected to a taking analysis, can we assume that such an action would not also be subject to judicial review? Although a zoning decision is not specifically denoted as a permitting action in LLUPA, it

4. In the proceedings before the district court, Highlands appears to have conceded that it was not challenging the City's decision to annex its property. Annexation is not substantively dealt with in LLUPA and, therefore, is not an action included in any of the judicial review provisions of LLUPA. Rather, annexation is dealt with under Title 50 of the Idaho Code which deals with municipal corporations, specifically I.C. § 50–222. Judicial review of an annexation decision, if available, must be made pursuant to that provision.

5. In *Ben Lomond, Inc. v. City of Idaho Falls,* 92 Idaho 595, 448 P.2d 209 (1968), we held that a property owner has an unqualified right to a building permit where he complies with the requirements of the property's zoning conditions. *Id.* at 600–01, 448 P.2d at 214–15.

is clear that actions other than those specifically dealing with "permits" give rise to judicial review. I.C. § 67–6535 deals with the "approval or denial of any application provided" in LLUPA. I.C. § 67–6535(a) and (b). The Legislature goes on to state its intent "that *decisions made pursuant to [LLUPA]* should be founded upon sound reason and practical application of recognized principles of law. *In reviewing such decisions,* the courts of the state are directed ..." I.C. § 67–6535(c) (emphasis added). It seems obvious that the Legislature contemplated judicial review for any application subject to the due process requirements of LLUPA, including zoning decisions. The Legislature continues, "only those whose challenge to a decision demonstrates actual harm or violation of fundamental rights, not the mere possibility thereof, shall be entitled to a remedy or reversal of a decision." *Id.* The Legislature then says that every final decision rendered concerning a site-specific land use request shall provide or be accompanied by notice of the applicant's right to request a regulatory taking analysis. Wouldn't the landowner also have the right to seek judicial review of a final decision concerning a site-specific land use request, such as that involved in this case?

As mentioned above, a zoning classification constitutes a permit to pursue any development allowed under that classification. LLUPA alternately characterizes a variance from a zoning classification as a variance or variance permit. I.C. § 67–6516. The Legislature states, "A variance shall not be considered a right or special privilege ..." However, since a variance is also identified as a "permit," one can seek judicial review for denial of the same. The Legislature further provided that denial of a variance permit or approval of a variance permit with conditions unacceptable to the landowner may be subject to a regulatory taking analysis. I.C. § 67–6512 provides that a local government may provide for processing of applications for special or conditional use permits, which allow for uses other than outright permitted uses in a particular zoning classification. The Legislature provides that denial of such a permit or approval with conditions unacceptable to the landowner may be subject to

a regulatory taking analysis. And, by virtue of the fact that such a use is specifically characterized as a permit, judicial review is also available. It would seem odd that a zoning classification, which automatically allows permitted uses as specified by the zoning ordinance, would not be subject to judicial review, but a variance or a conditional use would be reviewable just because they are specifically denoted as permits.

Reading LLUPA as a whole, it is fairly obvious that the Legislature did not intend to confine judicial review to just those land use actions specifically identified as being permits. It is true that I.C. § 67–6521(1)(a) defines an affected party as "one having an interest in real property which may be adversely affected by the issuance or denial of a permit authorizing the development," but it is obvious that a zoning classification can authorize permitted development. Subsection (2)(b) states that "An affected person claiming 'just compensation' for a perceived 'taking,' the basis of the claim being that a specific zoning action or permitting action restricting private property development ..." may seek a judicial determination. This provision does not apply to IDAPA review but it is significant for the language it employs. The language makes it clear that an affected person can be aggrieved either by a permitting action or by a specific zoning action. Both actions can authorize development.

While I agreed in *Giltner Dairy, LLC v. Jerome County,* 145 Idaho 630, 181 P.3d 1238 (2008) that judicial review is not available with regard to decisions granting or denying changes to a comprehensive plan or map, since the plan or map does not itself authorize any development, I am concerned that the Court's opinion will effectively foreclose review of zoning actions and other decisions that will either allow or prevent development. If one reads I.C. § 67–6519(2) to establish the entire universe of decisions that may be appealed under LLUPA—"a permit required or authorized under this chapter"—we would eliminate appeals for decisions granting or denying most building permits, as I.C. § 67–6517 only deals with building permits "for development on any lands designated upon

the future acquisitions map," but not with the great number of building permits based upon existing land use ordinances. Review would be precluded for all zoning decisions, as well as interim and emergency moratoria on issuance of selected classes of permits under I.C. §§ 67–6523 and 6524 because moratoria are not stated to be permits. In my mind, actions taken by local governing bodies that either allow a specific development to proceed or prevent it from doing so fit within the category of permitting actions that are subject to the provisions allowing judicial review.

This Court has historically granted persons aggrieved by zoning decisions the right to obtain judicial review under I.C. § 67–6521(d). As this Court stated in *Application for Zoning Change,* "A person aggrieved by a planning and zoning decision may seek judicial review of that decision under the Idaho Administrative Procedures Act (IAPA). IDAHO CODE § 67–6521(d)." 140 Idaho at 513–14, 96 P.3d at 614–15. In *Evans,* we stated, "LLUPA confers standing to seek judicial review of a local land use decision to an 'affected person' aggrieved by a decision. I.C. § 67–6521(d)." 139 Idaho at 75, 73 P.3d at 88. There we reviewed the approval of both a planned unit development and a zoning change. The zoning decision at issue here should also be reviewed.

Not every zoning decision, however, is subject to judicial review. This Court has historically drawn a line between decisions that are legislative in nature and those that are quasi-judicial in nature, only allowing review of the latter category. In *Burt v. City of Idaho Falls,* 105 Idaho 65, 665 P.2d 1075 (1983), we held the Court would not review zoning decisions that are legislative in nature. *Burt* relied on *Cooper v. Bd. Of County Comm'rs of Ada County,* 101 Idaho 407, 614 P.2d 947 (1980). In that case, the Court engaged in substantial discussion about the difference between legislative and quasi-judicial action. It adopted a test articulated by the Oregon Supreme Court, which "involves the determination of whether action produces a general rule or policy which is applicable to an open class of individuals, interest, or situations, or whether it entails the application of a general

rule or policy to specific individuals, interests, or situations." *Id.* at 410, 614 P.2d at 950 (quoting *Fasano v. Bd. Of County Comm'rs,* 264 Or. 574, 581, 507 P.2d 23, 27 (1973)). In adopting this position, the Court said:

> It is not a part of the legislative function to grant permits, make special exceptions, or decide particular cases. Such activities are not legislative, but administrative, quasi-judicial, or judicial character. To place them in the hands of legislative bodies, whose acts as such are not judicially reviewable, is to open the door completely to arbitrary government.

*Id.* at 410, 614 P.2d 947, 614 P.2d at 949 (quoting *Ward v. Village of Skokie,* 26 Ill.2d 415, 424, 186 N.E.2d 529, 533 (1962)). Thus, the crucial distinction is whether the zoning action announces a broad policy, in which event it is non-reviewable legislative action, or whether it merely applies the policy to an individual, in which event it is reviewable quasi-judicial action.

The City's action here was, without question, quasi-judicial in nature. When the City agreed to annex Highlands' property, it downgraded the zoning of the property from the existing county zoning ("R–6", which allowed six dwelling units per acre) to a city "A (Open)" zone, which allowed one dwelling per acre. The planning and zoning staff had recommended the property be zoned "R–1B" (which would allow development of a single family residential subdivision with 9,000 square foot lots), technically a downzone but acceptable to Highlands. The Planning and Zoning Commission rejected the recommendation, opting for the A (Open) zone. While the City acknowledged its normal policy of assigning a zoning classification equivalent to that which the property had in the county at the time of annexation, it decided to assign the lower classification until such time as Highlands revealed its plans for the development, so that traffic impacts and other potential impacts could be determined. The City asked Highlands to submit a development plan, indicating it would then revisit the zoning status of the property. Highlands refused. The City therefore assigned the land

A (Open) zoning until Highlands submitted a development plan.

The City determined that the zoning proposed by Highlands did not meet the criteria of the City's comprehensive plan and land use map, and further determined that A (Open) zoning complied with those documents and that A (Open) zoning would not adversely impact transportation or other public facilities, utilities, quality of life, residential density, and the like. It is clear the City was making a site-specific determination of how the assigned zoning would fit within policies and plans previously put into effect by the City. As a quasi-judicial action, the City's decision is subject to judicial review.

Although neither party addressed the issue of exhaustion of remedies in their presentation to this Court, it appears that the district court's dismissal of the case was largely based on Highlands' perceived failure to exhaust its administrative remedies. In its oral ruling on the record, the district court expressed concern as to the finality of the City's action, noting that the City had invited Highlands to reveal its development plans and seek an upgrade in the zoning classification. The court indicated that Highlands had failed to show any harm by the City's action because it had not pursued this avenue. According to the court, "Until he comes forward with a development plan and says, 'I want to develop this and need this zone and ... the city won't give it to me,' he doesn't have anything to complain about; has he?" The district court continued, "I think [Highlands] has to show the city ... [its] hand before [it is] going to get any relief in this; and then [it] can appeal, I suppose."

A person is not entitled to judicial review of a zoning action until that person has exhausted all administrative remedies. I.C. §§ 67–6519 and 67–6521(1)(d); I.C. § 67–5271(1). Before a court will hear an appeal from an agency adjudication, a litigant must normally exhaust the administrative remedies that agency makes available. *Nation v. State, Dept. of Corr.*, 144 Idaho 177, 193, 158 P.3d 953, 969 (2007). "[T]he doctrine of exhaustion generally requires that the case run the full gamut of administrative proceedings before an application for judicial relief may

be considered." *Regan v. Kootenai County*, 140 Idaho 721, 724, 100 P.3d 615, 618 (2004). This Court expressed when the "full gamut of administrative proceedings" benchmark is met in *Canal/Norcrest/Columbus Action Committee v. City of Boise*, 136 Idaho 666, 39 P.3d 606 (2001). There, we said that administrative proceedings were final when the administrative agency no longer has need to act. *Id.* at 670, 39 P.3d at 610. In other words, "an inquiry into whether further action by the Board or the City is required determines the finality of the approval for appeal purposes." *Id.* In that case, the appellant contended that because the Boise City Code provided separate processes to challenge approval of conditional use permits and design review permits, the approval of one of its two permits was a final, appealable decision. This Court agreed, holding that approval of the conditional use permit was a final, appealable decision subject to judicial review, even though the design review permit was still pending. *Id.* Here, although the City encouraged Highlands to submit additional information regarding its development plans in order to seek a zoning classification providing for greater density development, there was no further action to take in order to implement the A (Open) zoning classification assigned by the City. As far as the City was concerned, its action was concluded. Any further action with regard to zoning was clearly at the option of Highlands. Highlands could seek a rezone or, on the other hand, remain steadfast in its refusal to submit any further development information and settle for the A (Open) classification. The district court incorrectly concluded that the City's action lacked finality and that there were additional administrative remedies that Highlands could pursue.

Highlands argues that the City exceeded its authority and violated the governing annexation statutes by mandating that an owner of property located in the City's area of impact file for annexation with the City prior to being permitted to subdivide his property and, further, that the City acted outside of its corporate limits by virtue of the regulatory scheme requiring prospective developers in the area of impact to first seek annexation.

In its response, the City states that neither of these arguments was raised before the City Council. Further, the City points out that it was not the City that required Highlands to request the annexation of its property. Rather, it was the Ada County ordinance that required Highlands to seek annexation by the City prior to receiving authorization to develop the land. The City asserts that any action it took was within its jurisdictional limits. That is, the zoning classification about which Highlands complains was established concurrent with the annexation of the land into the corporate limits. The City took no action to affect the status of land outside of its jurisdiction.

The City is correct on all counts. "It is well established that in order for an issue to be raised on appeal, the record must reveal an adverse ruling which forms the basis for an assignment of error." *Whitted v. Canyon County Board of Comr's,* 137 Idaho 118, 121, 44 P.3d 1173, 1176 (2002). Issues not raised below but raised for the first time on appeal will not be considered or reviewed. *Id.* at 122, 44 P.3d at 1177. Highlands did not raise these issues before the City and they are not appropriate for consideration here.

It might, however, be pointed out that, if Highlands has a legitimate complaint in this regard, a matter upon which we do not opine, its complaint is against Ada County, rather than the City. It was the county ordinance that required Highlands to first apply to the City for annexation in order to pursue development of its property. The County is not a party to this proceeding. Therefore, there is no basis for this Court to consider the issue. Furthermore, Highlands has not challenged the City's action in annexing the property, only its action in assigning a zoning classification. The zoning classification was assigned as part of the annexation process—as part and parcel of the procedure of bringing Highlands' property within the corporate limits—and, therefore, the City has taken no extraterritorial action, as Highlands claims.

Highlands contends that the City violated its policy for zoning of annexed property by downgrading the zoning classification of its parcels from the County's six units per acre to the City's A (Open) classification, which only allows one unit per acre. According to Highlands, it is the City's policy to assign zoning equivalent to the classification that the property had under the County. Highlands contends the City's failure to observe the policy entitles it to relief.

The City acknowledges having a policy of assigning zoning equivalent to that which the property had prior to annexation but contends that it is not a hard and fast rule. According to the City, the receipt of equivalent zoning depends upon a finding that the equivalent status is in compliance with requirements of the City's zoning code.

A review of the record discloses that the parties variously described the equivalency policy as a "requirement," a "policy," a "standard practice," "some obligation to look at the existing zoning," and "a recognition of pre-existing zoning." The City zoning code, itself, does not contain any mention of the policy. The policy appears to arise from the City's comprehensive plan, supplemented by the City's land use map pertaining to the area in question. The following reference in the City Council's Findings appears to state the entirety of the policy:

> Policy 8.1.5 of the Boise City Comprehensive Plan states that: "The Land Use Map shall serve as a guide for future zone changes in the planning area, however, any zoning which existed before the Land Use Map shall be considered to be grandfathered and may be utilized pursuant to appropriate findings of approval as required by the zoning code."

The parties do not contest that the Highlands parcels qualify for the grandfather provision.

The question, then, is whether the record discloses that Highlands was inappropriately deprived of the benefit of the policy. In its Findings, the City cites *Ben Lomond, Inc. v. City of Idaho Falls,* 92 Idaho 595, 448 P.2d 209 (1968) for the proposition that when land is annexed into a city, the property may be zoned according to the city's zoning ordinance as though it were never zoned. In *Ben Lomond,* the Court did, indeed, rule that a county zoning ordinance ceased to apply once the land in question was removed from

the county's jurisdiction by annexation. *Id.* at 599, 448 P.2d at 213. We stated: "The land was from that time subject to the city's jurisdiction, and the city having failed to take any action to provide a zoning classification for that land, the conclusion is inescapable that the land was unzoned." *Id.* Earlier in that decision, the Court stated it was adopting the majority rule, which it described as follows:

The majority rule that land formerly within the county's jurisdiction, upon annexation comes into the city as unzoned land is succinctly stated in 101 C.J.S. Zoning § 134, p. 892:

"The zoning status of property annexed to a municipality depends on the provisions of the municipal ordinances, and in the absence of any provision covering the matter it has been held that unincorporated territory, on being annexed to a city, occupies the status of unzoned property regardless of its zoning status before annexation. County zoning regulations cease to apply to territory which has become part of a city."

*Id.* at 598, 448 P.2d at 212.

Highlands' argument appears to be that the policy in question is a hard and fast rule that the City is required to assiduously apply, regardless of the particular attributes of the annexed property. The argument might have some merit under the majority rule adopted in *Ben Lomond,* if the City code contained a "provision covering the matter" that unequivocally granted equivalent zoning. That is not the case here.

Boise City Code § 11–06–01.03 requires that any zoning change, modification or reclassification comply with and conform to the Comprehensive Plan. Policy 8.1.5 of the Comprehensive Plan does provide that grandfathered zoning "may be utilized pursuant to appropriate findings of approval as required by the zoning code." This is not an unequivocal grant of grandfather rights upon annexation. Rather, it appears, as the City contends, to allow grandfathering so long as it is found to be appropriate under the provisions of the zoning code.

Here, the City declined to recognize any grandfather rights based on the ground that Highlands had provided insufficient information for the City to determine whether the zoning classification requested by Highlands would comply with certain zoning requirements. In this regard, the City pointed to concerns that the traffic volume service levels had already been exceeded for the area, that the higher density development requested by Highlands would adversely impact traffic capacity and traffic safety, and that Highlands had provided insufficient information to evaluate such impacts. In its Findings, the City Council stated, "Testimony in the record establishes a clear issue of public safety based upon narrow streets, traffic and access concerns." The Council continued:

Part of deciding if a project should be approved in light of concerns over public health, safety and welfare is for the developer to present a plan which is specific enough for the Commission and the Council to intelligently make this finding. That burden is on the developer. The Commission did not find that the developer met the burden.

It is for the zoning agency to consider and weigh the evidence when making a zoning decision. This Court defers to the agency's factual findings unless they are clearly erroneous. If an applicant does not supply sufficient facts in order for the agency to make a reasoned decision as to whether a proposed zoning classification meets the City's requirements, we will not second guess the agency. Here, the developer declined to provide information to the City regarding its plans for development of the parcels so that an evaluation could be made regarding traffic impacts and possible means of alleviating the same. We cannot say that the City's determination is unsupported by the record. Although Highlands may have had a claim to some grandfather status, it failed to provide the evidence to support that status. Thus, the district court's decision to dismiss did not constitute error.

Highlands contends that the notice of the public hearing before the Planning and Zoning Commission on the annexation application scheduled for January 8, 2001, was flawed. According to Highlands, "The legal

notice to the public stated that Highlands was requesting R–3 zoning, when in fact Highlands agreed to an R–1B zoning designation with the Boise City Planning and Development staff." Apparently, Highlands believes that somehow the public was misinformed as to its intentions, but it doesn't explain how it was harmed.

The notice was technically correct because Highlands did request R3 zoning in its application. There was a subsequent agreement that the staff would recommend, and Highlands would accept, R–1B. However, Highlands knew the facts and was not misled as to what the hearing would be about. Highlands attended the hearing and was given full opportunity to present its case. And, in any event, the City Council reviewed the matter *de novo* and entertained testimony from Highlands and a number of third parties, and there is no contention that the notice of the City Council hearing was flawed in any manner.

Thus, while I would hold that Highlands was entitled to IDAPA review of the zoning decision, I would find against Highlands on the merits. However, that is not the end of the story. Highlands also asserted damage claims against the City, which the Court has overlooked.

## II. Civil Damage Claims

The initial pleading filed by Highlands in the district court is entitled Notice of Appeal, and Complaint and Demand for Jury Trial. The document indicates a fee category of R.2 with a filing fee of $72. Highlands primarily seeks judicial review and reversal of the City's zoning decision but also seeks monetary damages for an alleged violation of its equal protection rights (Count One) and for alleged violation of its due process rights (Count Two).

There seems to be an increasing tendency, particularly in land use cases, for counsel to combine civil damage claims with their administrative appeal. This Court has yet to directly rule on the propriety of this practice. I do have concerns about whether a claim for civil damages against a governmental entity may be combined with an administrative appeal of that entity's decision and whether, if a combined filing is permissible, only one filing fee category is payable. Until the Court does directly address these issues, better practice may dictate separate filings and separate fees. *See, e.g., Cobbley v. City of Challis,* 143 Idaho 130, 139 P.3d 732 (2006) where the court disapproved of a single filing in a somewhat related situation. However, since the Court has not directly ruled on the situation presented here, it would seem that Highlands is entitled to a merits consideration of its civil damage claims.

The civil damage claims are not reviewed under IDAPA. LLUPA does address the issue of judicial review of certain taking actions but the provision is somewhat convoluted and narrowly tailored and may or may not apply in these circumstances. I.C. § 67–6521(2)(b). However, the Court's jurisdiction is not constrained by IDAPA or LLUPA. This Court has often reviewed cases where landowners seek declaratory, injunctive, or takings remedies in zoning matters, separate and apart from relief under LLUPA and IDAPA. For example, in *McCuskey v. Canyon County Comm'rs.,* 128 Idaho 213, 912 P.2d 100 (1996), we considered a case where a property owner sought compensation for an alleged taking of property by virtue of a zoning ordinance. In *City of Lewiston v. Knieriem,* 107 Idaho 80, 685 P.2d 821 (1984), we entertained a case where a property owner sought injunctive relief for violation of his due process and equal protection rights by virtue of a zoning ordinance. In that case the Court stated:

Local legislative bodies are authorized to enact zoning ordinances restricting use of property within the corporate limits. The zoning power is not unlimited; the power to zone derives from the police power of the state, and zoning ordinances must therefore bear a reasonable relation to goals properly pursued by the state through its police power. A strong presumption exists in favor of the validity of local zoning ordinances. The burden of proving that the ordinance is invalid rests upon the party challenging its validity and the presumption in favor of validity can be overcome only by a clear showing that the ordinance as applied is confiscatory, arbi-

**970**

trary, unreasonable, and capricious. Where there is a basis for a reasonable difference of opinion, or if the validity of legislative classification for zoning purposes is debatable, a court may not substitute its judgment for that of the local zoning authority.

*Id.* at 83, 685 P.2d at 824 (internal citation omitted).

While Highlands has asserted claims that should be considered, the record provides little support for the merits of those claims. The district court apparently dismissed the civil damage claims on the ground that Highlands had failed to pursue its administrative remedies and thus was unable to show any damage. However, the dismissal is more correctly grounded on the fact that the City acted within the law, as discussed in the previous section. Highlands failed to show that its equal protection or due process rights were violated and, therefore, the dismissal of those claims was appropriate, albeit on different grounds.

Justice BURDICK concurring in the dissent.